Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA  95008
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

David Shelton (admitted *pro hac vice*)
DAVID SHELTON PLLC
1223 Jackson Avenue, Suite 202
P.O. Box 2541
Oxford, MS 38655
david@davidsheltonpllc.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATALIA BRUTON, individually and on behalf of all others similarly situated, | Case No.  5:12-CV-02412-LHK |
| Plaintiff, | **SECOND AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF** |
| v. | |
| GERBER PRODUCTS COMPANY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Natalia Bruton ("Plaintiff"), through her undersigned attorneys, brings this lawsuit against Gerber Products Company ("Gerber" or "Defendant") as to her own acts upon personal knowledge, and as to all other matters upon information and belief.

## DEFINITIONS

1.      "Class Period" is May 11, 2008 to the present.

2.      "Purchased Products" are the following products purchased by the Plaintiff during the Class Period: Gerber Nature Select 2nd Foods Fruit–Banana Plum Grape (Exhibit B); Gerber Nature Select 2nd Foods Fruit–Apples and Cherries (Exhibit C); Gerber Nature Select 2nd Foods Vegetables–Carrots (Exhibit D); Gerber Nature Select 2nd Foods Spoonable Smoothies–Mango (Exhibit E); Gerber Yogurt Blends Snack–Strawberry (Exhibit F); Graduates Lil' Crunchies–Mild Cheddar (Exhibit G); Graduates Fruit Puffs–Peach (Exhibit H); Graduates Wagon Wheels–Apple Harvest (Exhibit I); Graduates for Toddlers Animal Crackers–Cinnamon Graham (Exhibit J); Graduates for Toddlers Fruit Strips–Strawberry (Exhibit K); Gerber Nature Select 2nd Foods Vegetables–Sweet Potatoes & Corn (Exhibit L); Gerber Organic SmartNourish 2nd Foods-Banana Raspberry Oatmeal (Exhibit M); Gerber Organic SmartNourish 2nd Foods-Butternut Squash & Harvest Apple with Mixed Grains (Exhibit N); Gerber Organic SmartNourish 2nd Foods-Farmer's Market Vegetable Blend with Mixed Grains (Exhibit O); and Gerber Single Grain Cereals – Oatmeal (Exhibit P).

3.      "Substantially Similar Products" are Defendant's other products listed in Exhibit A. Each of these products are packaged the same way as the Purchased Products of the same type, (b) make the same label representation(s) as described herein that Defendant made on the Purchased Products; and (c) violate the same regulations of the Sherman Food & Drug Cosmetic Law, California Health & Safety Code § 109875, *et seq.* ("Sherman Law") in the exact same manner as the Purchased Products.

4.     "Misbranded Food Products" refers to both "Purchased Products" and "Substantially Similar Products," collectively.

5.     Consistent with the Court's September 6, 2013 order, Plaintiff has attached a revised chart that includes the products at issue, by category and flavor. The chart also includes the nutrient content claims and sugar-related at issue, as well as the corresponding legal claims. *See* Exhibit A.

6.     Plaintiff identifies both Purchased Products and Substantially Similar Products on Exhibit A. Plaintiff reserves the right to revise and/or supplement Exhibit A if additional evidence is adduced during discovery regarding Defendant's label representations on its food products.

## SUMMARY OF THE CASE

### *Misbranding*

7.     Plaintiff's case has two distinct facets. First, the "misbranding" part. This case seeks to recover for the injuries suffered by the Plaintiff and the Class as a direct result of Defendant's unlawful sale of misbranded food products. Defendant packaged and labeled its Misbranded Food Products in violation of California's Sherman Law, which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") and the regulations adopted pursuant to that Act. These violations render Defendant's food products "misbranded." Defendant's actions violate the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") and the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.* ("CLRA").

8.     Under California law, misbranded food products cannot be legally sold or possessed, have no economic value and are legally worthless. Indeed, the sale or possession of misbranded food products is a criminal act in California.

9.     By selling such illegal products to the unsuspecting Plaintiff, Defendant profited at

Plaintiff's expense and unlawfully deprived Plaintiff of the money she paid to purchase food products that were illegal to sell, possess, or resell and had no economic value.

10.     California law is clear that reliance by Plaintiff or the Class members is not a necessary element for a plaintiff to prevail under the UCL unlawful prong or the CLRA for a claim based on the sale of an illegal product.

11.     Thus, the unlawful sale of a misbranded product that was illegal to sell or possess – standing alone without any allegations of deception by Defendant, or review of or reliance on the labels by Plaintiff – gives rise to causes of action under the UCL and CLRA. In short, Defendant's injury-causing unlawful conduct in selling an illegal product to an unsuspecting consumer is the only necessary element needed for UCL and CLRA liability. All Plaintiff needs to show is that she bought an unlawful product and was injured as a result. This claim does not sound in fraud.

12.     Gerber's products are misbranded and therefore unlawful. Food manufacturers are prohibited from making nutrient content claims with respect to food products intended to be consumed by children under two years old. This is because the nutritional needs of toddlers and infants are markedly different from those of adults. While a product that is low in fat may be a healthy choice for adults, for example, health experts advise against restricting fat in young children's diets because they need the calories and nutrients fat provides to grow and properly develop.  Thus, nutrient content claims that may be helpful in making healthy choices with respect to products intended to be consumed by adults could in fact be misleading and harmful with respect to products intended to be consumed by infants and children under two years of age.

13.     In the present case, Plaintiff was injured by Defendant's illegal sale of the Purchased Products. Plaintiff paid money to purchase illegal products that were worthless and could not be legally sold or possessed. Plaintiff was also unwittingly placed in a worse legal

situation as a result of Defendant's unlawful sale of illegal products to her. Plaintiff would not have purchased the Purchased Products had she known that the products were illegal and could not be lawfully possessed. No reasonable consumer would purchase such a product. The Class suffered the same injuries as Plaintiff due to the Class's purchase of the Purchased Products.

14.     Defendant has violated the Sherman Law § 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded. As discussed herein, the illegal sale of a misbranded product to a consumer results in an independent violation of the unlawful prong of the UCL and CLRA that is separate and apart from the underlying unlawful labeling practice that resulted in the product being misbranded. While not required for these claims, the Plaintiff relied on the fact that Defendant's Purchased Products were legal and that its labeling and label claims were legal.

15.     Due to Defendant's misbranding and sale of the Purchased Products, Plaintiff lost money by purchasing unlawful products.

### Misleading and Deceptive

16.     Second, the "misleading" part.  In addition to being misbranded under the Sherman Law, each Purchased Product has label statements that are misleading, deceptive and fraudulent. These label statements include two categories of label statements: (1) the nutrient content claims: "Excellent Source" and "Good Source," "Healthy" claims, "No Added Sugar" and "No Added Refined Sugar" claims; and (2) sugar-related claims.

17.     Prior to purchase, Plaintiff reviewed the illegal nutrient content claims and sugar-related claims on the labels of each respective Purchased Product she purchased. Further, Plaintiff reasonably relied, in substantial part, on these statements. Plaintiff was thereby misled in deciding to buy the Purchased Products. Plaintiff was deceived into buying the Purchased Products in substantial part because of these label statements, and because of these statements, she believed

that the Purchased Products were healthier than other similar products.  Reasonable consumers would be misled in the same way.

18.     Defendant also misled Plaintiff to believe that the Purchased Products were legal to purchase and possess. Had Plaintiff known that the Purchased Products were misbranded, she would not have bought them. Plaintiff relied on (a) the illegal nutrient content claims and sugar-related claims, and (b) the Defendant's implicit representation based on Defendant's material omission of material facts that these Purchased Products were legal to sell and possess. Reasonable consumers would be, and were, misled in the same manner as Plaintiff.

19.     Defendant had a duty to disclose the illegality of its misbranded products because (a) Defendant had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiff; and (b) Defendant actively concealed a material fact from the Plaintiff. Defendant had a duty to disclose the information required by the labeling laws discussed herein because of the disclosure requirements contained in those laws and because in making its label claims, Defendant made partial representations that are misleading because other material facts have not been disclosed.

## PARTIES, JURISDICTION AND VENUE

20.     Plaintiff Natalia Bruton is a resident of San Jose, California who bought Defendant's Purchased Products, as described herein, in California during the Class Period.

21.     Defendant Gerber Products Company is a privately held Michigan corporation with its principal place of business in Fremont, Michigan. Gerber is one of the leading producers of retail food products sold in California and nationwide. More specifically, Defendant is one of the leading producers of retail baby food products, including the Purchased Products. Defendant sells its Misbranded Food Products to consumers through grocery stores and other retail stores throughout the United States and California.

22.     California law applies to all claims set forth in this Second Amended Complaint

because Plaintiff lives in California and purchased Gerber products in California. All of the misconduct alleged herein was contrived in, implemented in, and has a shared nexus with California. The formulation and execution of the unlawful practices alleged herein occurred in, or emanated from, California.  Accordingly, California has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiff and all Class members.

23.     As this Court has specifically found, this Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

24.     This Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

25.     This Court has personal jurisdiction over Defendant because: (i) a substantial portion of the wrongdoing alleged in this Second Amended Complaint occurred in California, (ii) Defendant is authorized to do business in California, (iii) Defendant has sufficient minimum contacts with California, and (iv) Defendant otherwise intentionally availed itself of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

26.     Because a substantial part of the events or omissions giving rise to these claims occurred in this district and because this Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## BACKGROUND

### *Gerber Products Company*

27.     Gerber claims to be "the world's most trusted name in baby food." http://www.gerber.com/nestle_nutrition/default.aspx. Gerber offers more than 190 products in 80

countries, with labeling in 16 languages. Nestlé SA purchased the Gerber brand in 2007 for $5.5 billion in cash. Gerber reportedly controls between 70 and 80 percent of the baby food market in the United States.

28.     Gerber packages and sells such products as puree baby food, snacks, yogurts, side dishes, and beverages for infants and children under two years of age. Gerber organizes its products by "stages" as follows: Birth+, Supported Sitter, Sitter, Crawler, Toddler, and Preschooler. According to Gerber's website, a "supported sitter" is 4 to 5 months old; a "sitter" is 6 to 7 months old; a "crawler" is 8 to 11 months old; and a "toddler" is 12 months old. www.gerber.com. Therefore, all Gerber product categories other than "Preschooler" describe children under two years old.

29.     With the recent increase in children's disease and illness caused by poor nutrition and excessive consumption of fats and sugars, including conditions such as diabetes and obesity, parents are increasingly aware of the need to provide healthy food for their children. To make healthy food choices for their children, parents rely on nutritional information on food product labels. Indeed, Plaintiff Bruton relies on the representations made on product labeling to make choices about what food to purchase for her child.

30.     Intending to profit from parents' increasing desire to purchase healthy food for their children, Defendant misbrands its baby food products by, among other things, making nutrient content claims that are strictly prohibited by the Food and Drug Administration ("FDA"), and by misleading purchasers into believing that its products are healthier because there is "no sugar added" and/or healthier for children under two years of age, in order to induce parents into purchasing Gerber products.

### Gerber Labeling Claims

31.     Defendant has utilized a number of specific unlawful, improper, unauthorized,

misleading, and false claims on their products' labeling. A chart listing Defendant's unlawful labeling claims on both the Purchased Products and the Substantially Similar Products is attached hereto as Exhibit A.

32.     As depicted in Exhibits A-P, the Purchased Products contain nutrient content claims and/or sugar-related claims.

33.     As depicted in Exhibit A, the Substantially Similar Products also contain nutrient content claims and/or sugar-related claims.

34.     The Misbranded Food Products identified in Exhibit A are all intended for children under two years of age.

35.     Gerber's website, which is specifically referenced on its product labels, also makes nutrient content claims and sugar-related claims.

**IDENTICAL CALIFORNIA AND FEDERAL LAW REGULATE FOOD LABELING**

36.     Food manufacturers are required to comply with identical state and federal laws and regulations that govern the labeling of food products. First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

37.     Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." California Health & Safety Code § 110100.

38.     Under both the Sherman Law and FDCA Section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. Cal. Health & Safety Law §§ 110660, 110705; 21 U.S.C. § 343.

39.     In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. As described herein, Defendant has violated the following

Sherman Law sections:  California Health & Safety Code § 110390 (unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product); California Health & Safety Code § 110395 (unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food); California Health & Safety Code §§ 110398 and 110400 (unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised); California Health & Safety Code § 110660 (misbranded if label is false and misleading); California Health & Safety Code § 110665 (misbranded if label fails to conform to the requirements set forth in 21 U.S.C. § 343(q)); California Health & Safety Code § 110670 (misbranded if label fails to conform with the requirements of 21 U.S.C. § 343(r)); California Health & Safety Code § 110705 (misbranded if words, statements and other information required by the Sherman Law are either missing or not sufficiently conspicuous); California Health & Safety Code § 110765 (which makes it unlawful for any person to misbrand any food); and California Health & Safety Code § 110770 (unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

40.     Plaintiff's claims are based on violations of the Sherman Law.

### FDA ENFORCEMENT HISTORY

41.     In recent years the FDA has become increasingly concerned that food manufacturers have been disregarding food-labeling regulations. To address this concern, the FDA elected to place the food industry on notice concerning the enforcement of food labeling regulations. In October 2009, the FDA issued a *Guidance for Industry: Letter Regarding Point Of Purchase Food Labeling* and on March 3, 2010 the FDA issued "*Open Letter to Industry from [FDA Commissioner] Dr. Hamburg*" to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.

42.     Dr. Margaret Hamburg's letter stated in pertinent part:

> [The] FDA is notifying a number of manufacturers that their labels are
> in violation of the law and subject to legal proceedings to remove
> misbranded products from the marketplace. While the warning letters
> that convey our regulatory intentions do not attempt to cover all

products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices.  For example:

> •  Nutrient content claims that FDA has authorized for use on foods for adults are not permitted on foods for children under two.  Such claims are highly inappropriate when they appear on food for infants and toddlers because it is well known that the nutritional needs of the very young are different than those of adults.

43.  In fact, the FDA has sent warning letters directly to Defendant Gerber and related companies. *See* Exhibits Q and R.

44.  More specifically, the FDA sent Defendant a warning letter for some of the same types of misbranded labels and deceptive labeling claims described herein. *See* Exhibit Q (February 22, 2010 FDA warning letter addressed to Nestle Nutrition, with a copy to Mark Shipley, Plant Manager at Gerber Products Company in Fremont, Michigan). In that letter, the FDA wrote in pertinent part:

> The products in your Gerber Graduates Fruit Puffs line are misbranded within the meaning of section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)] because their labeling includes unauthorized nutrient content claims.  Except for claims regarding the percentage of a vitamin or mineral for which there is an established Reference Daily Intake (RDI), a nutrient content claim may not be made for a food intended specifically for use by infants and children less than 2 years of age unless the claims is [sic] specifically provided for in parts 101, 105, or 107 of FDA regulations. 21 CFR 101.13(b)(3). Your Graduates Fruit Puffs products are specifically intended for infants and children under age 2. For example, the labeling indicates that the products are designed for the "crawler" stage of a child's life. The labeling for these products includes nutrient content claims such as "good source of iron, zinc, and vitamin E for infants and toddlers." The circumstances under which "good source" claims are permitted are defined in 21 CFR 101.54. That regulation does not allow such claims for foods intended specifically for infants and children under 2.
>
> Your 2nd Foods Carrots product is misbranded within the meaning of section 403(r)(1)(A) of the Act [21 U.S.C. § 343(r)(1)(A)] because its labeling includes unauthorized nutrient content claims. This product is also intended specifically for infants and children

1
2
3
4
5
6
7

under the age of two. For example, its labeling states that the product is appropriate for a "sitter," and sitting is a developmental milestone that generally occurs by the age of one. The 2nd Foods Carrots product label bears the nutrient content claim "healthy" as part of the statement "As Healthy as Fresh," and nutrient content claims such as "Excellent Source…of Vitamin A" and "No Added Sugar." These circumstances under which such claims are permitted are defined in 21 CFR 101.65(d), 21 CFR 101.54(b), and 21 CFR 101.60(c). However, these regulations do not allow the claim for products specifically intended for children under two years of age.

8
9
10
11

The above violations are not meant to be an all-inclusive list of deficiencies in your products or their labeling. It is your responsibility to ensure that your firm and all of your products are in compliance with the laws and regulations enforced by FDA. You should take prompt action to correct the violations. Failure to promptly correct these violations may result in regulatory actions without further notice, such as seizure and/or injunction.

12      45.      The FDA also wrote a letter to Nestle U.S.A., a sister company to Defendant. *See*

13  Exhibit R (December 4, 2009 warning letter to Brad Alford, Chairman and CEO of Nestle

14  U.S.A.). In that letter, the FDA wrote in pertinent part:

15

16
17
18
19
20
21
22
23
24
25
26

Your Juicy Juice Brain Development Fruit Juice Beverage product is misbranded within the meaning of section 403(r) of the Act [21 USC 343(r)] because its labeling includes unauthorized nutrient content claims. Except for statements that describe the percentage of a vitamin or mineral in relation to a Reference Daily Intake (RDI), a nutrient content claim cannot be made for a food intended for use by infants and children less than 2 years of age unless the claim is specifically provided for in parts 101, 105, or 107 of FDA regulations. 21 CFR 101.13(b)(3). This product is marketed specifically for children under two years of age, as indicated by the claim "Helps support brain development***in children under two years old," which appears on the product label. The label also bears the nutrient content claim "no sugar added." The circumstances under which a "no sugar added" claim is permitted are defined in 21 CFR 101.60(c). That regulation does not allow the claim for conventional food products intended for use in children under age 2. 21 CFR 101.60(c)(4). Therefore, the claim "no sugar added" misbrands your product.

27      46.      Despite these warning letters, Defendant did not change the labels on its

28  Misbranded Food Products that contained the labeling claims that were in violation.

47.     Additionally, the FDA has sent warning letters to the industry, including many of Defendant's peer food manufacturers. Defendant also ignored the numerous warning letters the FDA sent to other companies for similar violations and posted on the FDA website as guidance for food manufacturers. Defendant also ignored the FDA's Guidance for Industry, A Food Labeling Guide, which details the FDA's guidance on how to make food-labeling claims.

48.     Despite the FDA's numerous warnings to industry, Defendant has continued to sell products bearing unlawful food labeling claims without meeting the requirements to make those claims. Defendant's Misbranded Food Products continue to run afoul of FDA guidance as well as federal and California law, as Defendant continues to utilize unlawful claims on the labels of its Misbranded Food Products.

49.     Plaintiff did not know, and had no reason to know, that the Defendant's Misbranded Food Products were misbranded and bore food-labeling claims despite failing to meet the requirements to make those food-labeling claims.

50.     Defendant had actual knowledge of these warning letters, or Defendant should have known of these warning letters. Upon information and belief, Defendant did not change its labels in response to any warning letters, or for any other reason. As described herein, Defendant continues to misbrand its food products intended for children under two years of age, despite the fact that the FDA has warned Defendant that its products are misbranded.

## SHERMAN LAW VIOLATIONS

### *Defendant's Misbranded Food Products*

51.     Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a nutrient in a food is a "nutrient content claim" that must be made in accordance with the regulations that authorize the use of such claims. 21 U.S.C. § 343(r)(1)(A). California expressly adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law. Further, 21 C.F.R. § 101.13 provides the general requirements for nutrient content claims, which California has expressly adopted.  California Health & Safety Code § 110100.

52.     Nutrient content claims are claims about specific nutrients contained in a product. They are typically made on food packaging in a font large enough to be read by the average consumer. Because consumers rely upon these claims when making purchasing decisions, the regulations govern what claims can be made in order to prevent misleading claims.

53.     Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied nutrient content claims on labels of food products that are intended for sale for human consumption.

54.     An "expressed nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories"). *See* 21 C.F.R. § 101.13(b)(1). An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat"). 21 C.F.R. § 101.13(b)(2)(i-ii).

55.     FDA regulations authorize the use of a limited number of defined nutrient content claims. In addition, FDA's regulations authorize the use of only certain synonyms for these defined terms. If a nutrient content claim or its synonym is not included in the food labeling regulations, it cannot be used on a label. Only those claims, or their synonyms, that are specifically defined in the regulations may be used. All other claims are prohibited.  21 CFR §101.13(b).

56.     Only approved nutrient content claims will be permitted on the food label, and all other nutrient content claims will misbrand a food. It should thus be clear which type of claim is prohibited and which permitted. Food manufacturers are on notice that the use of an unapproved nutrient content claim is prohibited conduct.  58 FR 2302.  In addition, 21 USC §343(r)(2) prohibits using unauthorized undefined terms, and it declares foods that do so to be misbranded.

57.     21 C.F.R. § 101.13(b)(3) limits nutrient claims that may be made on "food intended specifically for use by infants and children less than 2 years of age" to claims regarding vitamins and minerals "that describe the percentage of a vitamin or mineral in the food, including foods intended specifically for use by infants and children less than 2 years of age, in relation to a Reference Daily Intake (RDI)." Except for those claims describing a percentage in relation to the RDI, "no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age."

58.     Misbranded products cannot be legally sold under California Law.  *See* Cal. Health and Safety Code § 110760. Misbranded products cannot be legally sold under Federal Law. *See* 21 U.S.C. §§ 331, 333.

### Defendant Make Unlawful and Misleading
### Nutrient Content Claims on Products Intended for Children

59.     Despite the clear directive, as described herein, prohibiting Defendant from making nutrient content claims on food intended specifically for use by infants and children less than two years of age, Defendant make such claims on its Gerber food products intended for use by such infants and children, as depicted in Exhibits A-P.

a.     *"Excellent Source" and "Good Source"* – As described herein, and in Exhibit A, Gerber food products which are intended for use by infants and children less than two years of age claim to be an "Excellent Source" and "Good Source" of certain vitamins and minerals.  All such Gerber products are misbranded within the meaning of FDCA § 403(r)(1)(A) and 21 U.S.C. § 343(r)(1)(A) because their labeling includes unauthorized nutrient content claims. Except for claims regarding the percentage of a vitamin or mineral for which there is an established Reference Daily Intake (RDI), a nutrient content claim may not be made for a food intended specifically for use by infants and children less than two years of age unless the claims are specifically provided for in parts 101, 105, or 107 of FDA regulations. *See* 21 CFR § 101.13(b)(3). The circumstances under which "source" claims are permitted are defined in 21 CFR §101.54, and that regulation does not allow such claims for foods intended specifically for infants and children under two years of age.

b.   *"Healthy"* - As described herein, and in Exhibit A, Gerber food products which are intended for use by infants and children less than two years of age bear the nutrient content claim "Healthy" as part of the following statements: "As Healthy as Fresh," "Nutrition for Healthy Growth & Natural Immune Support," and "Supports Healthy Growth & Development." All such products are misbranded within the meaning of section FDCA § 403(r)(1)(A) and 21 U.S.C. § 343(r)(1)(A) because the labeling includes unauthorized nutrient content claims. The circumstances under which such claims are permitted are defined in 21 CFR §101.65(d). However, these regulations do not allow the claim for products specifically intended for children under two years of age.

c.   *"No Added Sugar"* – As described herein, and in Exhibit A, Gerber food products which are intended for use by infants and children less than two years of age claim to have "No Added Sugar" or "No Added Refined Sugar." Such nutrient content claims may not be made on food products intended for children under two. *See* 21 CFR *§* 101.13(b)(3) (prohibiting all nutrient content claims on products intended for children under two, except as specifically provided for elsewhere); 21 CFR *§* 101.60(c)(4) (allowing "No Added Sugar" claims only with respect to dietary supplements or vitamins intended for children under two). All such products are misbranded within the meaning of section FDCA § 403(r)(1)(A) and 21 U.S.C. § 343(r)(1)(A) because the labeling includes unauthorized nutrient content claims.  The circumstances under which such claims are permitted are defined in 21 CFR §101.60(c). These regulations do not allow the claim for products specifically intended for children under two years of age.

60.     Nutrient content claims on products intended to be consumed by children under two are barred because the nutritional needs of children are very different from those of adults, and thus such nutritional claims on infant and toddler food can be highly misleading.

61.     In the FDA warning letter attached as Exhibit Q, the FDA specifically found that Defendant's Gerber Graduates Fruit Puffs products were misbranded in that they are intended to be consumed by children under two and make the prohibited nutrient content claims described herein. The FDA specifically wrote that the Puffs were misbranded because their labels claimed

to be "good source of iron, zinc, and vitamin E for infants and toddlers." Upon information and belief, Gerber removed these specific claims for "good source" from its Puffs' labels after receiving this warning letter. Nevertheless, Gerber continues today to make specific "good source" and "excellent source" claims on other baby food products despite the FDA's warning that this was a violation on the Puffs label. Despite the FDA warning, Gerber also continues to make the improper claims about their Puffs on their website.

http://www.gerber.com/AllStages/products/snacks/puffs_apple_cinnamon.aspx

62.      Defendant's 2nd Food Carrots is another Gerber product that is intended specifically for infants and children under the age of two. Defendant's labeling states that this product is appropriate for a "Sitter," and sitting is a developmental milestone that generally occurs by the age of one. According to Gerber's own website, a "sitter" is a child 6 to 7 months old. Defendant's 2nd Foods Carrots product is misbranded because its labeling includes unauthorized nutrient content claims. The 2nd Foods Carrots product label bears the nutrient content claim "healthy" as part of the statement "As Healthy as Fresh," and nutrient content claims such as "Excellent Source of Vitamin A" and "No Added Refined Sugar." The circumstances under which such claims are permitted are defined in 21 CFR §101.65(d), 21 CFR §101.54(b), and 21 CFR §101.60(c). These regulations, however, do not allow any claim of this type to be made on the label of products specifically intended for children under two years of age.

63.      In the February 22, 2010 FDA warning letter, the FDA specifically found that Defendant's 2nd Foods Carrots product is misbranded in that it is intended to be consumed by children under two and makes the prohibited nutrient content claims set forth above. *See* Exhibit Q. Defendant nevertheless continue to misbrand their baby food with this and other similar claims in violation of the law.

64.      Despite the FDA's warning that the phrase "As Healthy as Fresh" caused its carrots product to be misbranded, Gerber continues to use "As Healthy as Fresh" on many of its baby food labels. It also improperly uses a similar claim that a product "Supports Healthy Growth & Development" and "Nutrition for Healthy Growth & Natural Immune Support."

65.     As depicted on Exhibit A, many of Defendant's products intended for infants and children under two also contain a marketing logo using the phrase "NUTRI PROTECT" which typically shows small blocks in the arms of a child, labeled with iron, zinc, or a vitamin such as Vitamin E. In using those symbols, Defendant is either expressly or by implication making nutrient content claims, which are also prohibited as described herein.

66.     The violations identified by the FDA in its warning letters were not a comprehensive compilation of Defendant's violations, but were instead merely representative examples. Many of Defendant's other products continue to be misbranded in that they include other similar nutrient content claims on products intended to be consumed by children under two. For example, during the class period, Defendant's label on Graduates for Toddlers Banana Cookies product states that it is a "Good Source of Vitamin E, Iron, Zinc & Calcium."  Similarly, the "Graduates For Toddlers Fruit Strips Real Fruit Bars" claim to be an "Excellent Source of Vitamin C;" the "Graduates Lil' Crunchies" corn snack claims to be a "Good Source of Vitamin E, Iron, & Zinc;" the Graduates Arrowroot Cookies claim to be a "Good Source of Vitamin E, Zinc, & Calcium;" the Graduates "Lil' biscuits" claim to be a "Good Source of Calcium, Iron & Vitamin E & Zinc;" and the "Graduates For Toddlers Animal Crackers" claim to be a "Good Source of Vitamin E, Iron, Zinc and Calcium."  *Id.*  Each of Defendant's Gerber 2nd Foods products also claim to be an "Excellent Source" of various vitamins and to be "As Healthy As Fresh."  *See* Exhibit A for a detailed list.

67.     The circumstances under which such claims are permitted are defined in 21 CFR §101.65(d) and 21 CFR §101.54(c). These regulations, however, do not allow such a claim for products specifically intended for children under two years of age. Defendant's products listed herein are therefore misbranded. Defendant has also made the same unlawful claims on its websites and in its advertising in violation of federal and California laws.

68.     Plaintiff relied on these nutrient content claims. Because of these improper nutrient content claims, Plaintiff purchased these products and paid a premium for them. The regulations relating to nutrient content claims discussed herein are intended to ensure that consumers are not

misled as to the actual or relative levels of nutrients in food products. Defendant has violated these referenced regulations. Therefore, Defendant's Misbranded Food Products are misbranded as a matter of federal and California law and cannot be sold or held because they are legally worthless.

### Defendant Makes Unlawful and Misleading Sugar-Related Claims

69.     As depicted in Exhibit A, Defendant also claims that several of its products, such as its Gerber 2nd Foods products, contain "No Added Refined Sugar" or contain "No Added Sugar." Many of the Defendant's products that are labeled with a "No Added Sugar" or similar sugar-related nutrient content claim contain disqualifying levels of calories that prohibit the claim from being made absent a mandated disclosure statement warning of the higher caloric level of the products and thus violate 21 CFR §101.60(c)(2).

70.     Federal and California regulations regulate such sugar claims as a particular type of nutrient content claim. Specifically, 21 C.F.R. § 101.60 contains special requirements for nutrient claims that use the terms "no sugar added." Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements of 21 C.F.R. § 101.60 as its own. California Health & Safety Code § 110100.

71.     21 C.F.R. § 101.60(c)(2) provides in pertinent part:

(2) The terms "no added sugar," "without added sugar," or "no sugar added" may be used only if:

(i) No amount of sugars, as defined in §101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging; and

(ii) The product does not contain an ingredient containing added sugars such as jam, jelly, or concentrated fruit juice; and

(iii) The sugars content has not been increased above the amount present in the ingredients by some means such as the use of enzymes, except where the intended functional effect of the process is not to increase the sugars content of a food, and a functionally insignificant increase in sugars results; and

(iv) The food that it resembles and for which it substitutes normally contains added sugars; and

(v) The product bears a statement that the food is not "low calorie" or "calorie reduced" (unless the food meets the requirements for a "low" or "reduced calorie" food) and that directs consumers' attention to the nutrition panel for further information on sugar and calorie content.

72.   21 C.F.R. § 101.60(b)(2) provides that:

The terms "low-calorie," "few calories," "contains a small amount of calories," "low source of calories," or "low in calories" may be used on the label or in labeling of foods, except meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that: (i)(A) The food has a reference amount customarily consumed greater than 30 grams (g) or greater than 2 tablespoons and does not provide more than 40 calories per reference amount customarily consumed; or (B) The food has a reference amount customarily consumed of 30 g or less or 2 tablespoons or less and does not provide more than 40 calories per reference amount customarily consumed and, except for sugar substitutes, per 50 g ….(ii) If a food meets these conditions without the benefit of special processing, alteration, formulation, or reformulation to vary the caloric content, it is labeled to clearly refer to all foods of its type and not merely to the particular brand to which the label attaches (e.g., "celery, a low-calorie food").

73.   Defendant's products labeled "no sugar added" are not low-calorie and/or not suitable for weight control as they contain more than the 40 calories per reference amount customarily consumed; or for foods with a reference amount customarily consumed of 30 g or less or 2 tablespoons or less and does not provide more than 40 calories per reference amount customarily consumed and per 50 grams, which is the maximum amount allowed under 21 C.F.R. § 101.60(b)(2).

74.   Notwithstanding the fact that 21 C.F.R. § 101.60(c)(2) bars the use of the terms "no added sugar" on foods that are not low-calorie unless they bear a disclaimer referring to the nutrient facts table, Defendant has touted its non low-calorie products as containing "no added sugar" or "no added refined sugar" and have chosen to omit the mandated disclaimer statement.

75.   In doing so, Defendant has ignored the language of 21 C.F.R. § 101.60(c)(1) that states that:

Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a  product which is low in calories or significantly reduced in calories.

76.     Because consumers may reasonably be expected to regard terms that represent that the food contains "no added sugar" or sweeteners as indicating a product which is low in calories or significantly reduced in calories, consumers are misled when foods that are not low-calorie as a matter of law are falsely represented, through the unlawful use of phrases like "no added sugar" that they are not allowed to bear due to their high calorific levels and absence of mandated disclaimer or disclosure statements.

77.     The labeling for Defendant's products violate California law and federal law. For these reasons, Defendant's "no added sugar" claims at issue in this Complaint are misleading and in violation of 21 C.F.R. § 101.60(c)(2) and California law, and the products at issue are misbranded as a matter of law. Misbranded products cannot be legally sold and are legally worthless.

78.     Defendant is in violation despite numerous enforcement actions and warning letters pertaining to several other companies addressing the type of misleading sugar-related nutrient content claims described herein.

79.     Plaintiff did not know, and had no reason to know, that Defendant misbranded the Purchased Products, and bore nutrient content claims despite failing to meet the requirements to make those nutrient content claims.

80.     Defendant's products in this respect are misbranded under federal and California law.

### *Plaintiff Bought Defendant's Purchased Products*

81.     Plaintiff is concerned about the nutritional content of the food she purchased for her child's consumption, and seeks to ensure that her child maintains a healthy diet.

82.     As indicated in Exhibits A-P, and based on the definition of Purchased Products herein, Plaintiff purchased Defendant's food products intended for children under two at various times within the Class Period. During the Class Period, Plaintiffs spent more than $25.00 on the Purchased Products.

83.     Plaintiff read and reasonably relied on the labels as described herein when buying the Purchased Products. In relying on Defendant's labeling, Plaintiff based and justified her decision to purchase Defendant's products, in substantial part, on these labels.

84.     Defendant's web address is printed on its package labels, and by law Defendant's website misrepresentations are incorporated in its labels.

85.     Defendant's labeling claims were a material factor in Plaintiff's decisions to buy the Purchased Products. Based on Defendant's claims, Plaintiff believed that the products were a better and healthier choice than other available products.

86.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's products were misbranded as set forth herein, and would not have bought the products had she known the truth about them.

87.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's nutrient content claims on the products' labels were unlawful as set forth herein, and would not have bought the products had she known the truth about them.

88.     As a result of Defendant's misrepresentations, Plaintiff and thousands of others in the United States purchased the products at issue.

89.     After Plaintiff learned that Defendant's Purchased Products were falsely labeled, Plaintiff stopped purchasing them.

90.     Defendant's labeling, advertising, and marketing as alleged herein are false and misleading and designed to increase sales of the products at issue. Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's representations in determining whether to purchase the products at issue.

91.     A reasonable person would attach importance to whether Defendant's products were "misbranded," *i.e.* neither legally salable nor capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue.

1   Plaintiff would not have purchased the Defendant's products had she known they were not

2   capable of being legally sold or held.

3      92.    Plaintiff had cheaper alternatives available and paid an unwarranted premium for

4   the Purchased Products.

5   ***Defendant Has Violated California Laws***

6      93.    Defendant has manufactured, advertised, distributed, and sold products that are

7   misbranded under California law. Misbranded products cannot be legally manufactured,

8   advertised, distributed, sold or held, and are legally worthless as a matter of law.

9      94.    Defendant has violated California Health & Safety Code provisions, including

10   those which make it unlawful to disseminate false or misleading food advertisements that include

11   statements on products and product packaging or labeling or any other medium used to directly or

12   indirectly induce the purchase of a food product. *See* §§ 109885 and 110390.

13      95.    Defendant has violated California Health & Safety Code § 110395 which makes it

14   unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely advertised food.

15      96.    Defendant has violated California Health & Safety Code §§ 110398 and 110400

16   which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any

17   food that has been falsely advertised.

18      97.    Defendant has violated California Health & Safety Code § 110660 because its

19   food products are misbranded in one or more ways, as follows:

20      a.    They are misbranded under California Health & Safety Code § 110665

21   because their labeling fails to conform to the requirements for nutrient labeling set forth in 21

22   U.S.C. § 343(q) and the regulations adopted thereto;

23      b.    They are misbranded under California Health & Safety Code § 110670

24   because their labeling fails to conform with the requirements for nutrient content and health

25   claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto; and

26

27

28

c.      They are misbranded under California Health & Safety Code § 110705 because words, statements, and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

98.     Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, advertise, distribute, hold, sell, or offer for sale any food that is misbranded.

99.     Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

100.    Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

101.    Defendant has violated the standards set by 21 CFR §§ 101.13, 101.54, 101.60, and 101.65, which have been adopted by reference in the Sherman Law, as more fully described herein, by including unauthorized nutrient content claims on their products.

102.    Defendant's labeling, advertising, and marketing as alleged herein is false and misleading and designed to increase sales of the products at issue. Defendant's misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's representations in determining whether to purchase the products at issue. A reasonable person would attach importance to whether Defendant's products were legally salable and capable of legal possession and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased the Defendant's Misbranded Food Products had she known they were not capable of being legally sold or held.

## CLASS ACTION ALLEGATIONS

103.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class: *All persons in the United States who purchased any of Defendant's food products identified in Exhibit A within the last four years*.

104.    The following persons are expressly excluded from the Class:  (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

105.    This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

106.    Numerosity:  Based upon Defendant's publicly available data with respect to the products at issue, it is estimated that the Class numbers at least in the thousands, and that joinder of all Class members is impracticable.

107.    Common Questions Predominate:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right of each Class member to recover. Questions of law and fact common to each Class member include, for example:

    a.    Whether the Class Products are misbranded under the Sherman Law;

    b.    Whether Defendant violated the Sherman Law;

    c.    Whether Defendant made unlawful and/or misleading claims with respect to its Class Products sold to consumers;

    d.    Whether Defendant engaged in unlawful and misleading, unfair or deceptive business practices by failing to properly package and label its Class Products sold to consumers;

    e.    Whether Defendant violated California Bus. & Prof. Code § 17200 *et seq.*, California Bus. & Prof. Code § 17500 *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*, and the Sherman Law;

    f.    Whether Plaintiffs and the class are entitled to equitable and/or injunctive relief; and

g.   Whether Defendant's unlawful and misleading, unfair and/or deceptive practices harmed

Plaintiffs and the class.

108.   <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Misbranded Food Products during the Class Period. Defendant's unlawful, misleading, unfair, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law. The injuries of each member of the Class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

109.   <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and those of the members of the Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

110.   <u>Superiority</u>:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.

1  Further, as the damages suffered by individual members of the Class may be relatively small, the

2  expense and burden of individual litigation would make it difficult or impossible for individual

3  members of the Class to redress the wrongs done to them, while an important public interest will

4  be served by addressing the matter as a class action. Class treatment of common questions of law

5  and fact would also be superior to multiple individual actions or piecemeal litigation in that class

6  treatment will conserve the resources of the Court and the litigants, and will promote consistency

7  and efficiency of adjudication.

8      111.   The prerequisites to maintaining a class action for injunctive or equitable relief

9  pursuant to FED. R. CIV. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds

10  generally applicable to the Class, thereby making appropriate final injunctive or equitable relief

11  with respect to the Class as a whole.

12      112.   The prerequisites to maintaining a class action pursuant to FED. R. CIV. P. 23(b)(3)

13  are met as questions of law or fact common to class members predominate over any questions

14  affecting only individual members, and a class action is superior to other available methods for

15  fairly and efficiently adjudicating the controversy.

16      113.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be

17  encountered in the management of this action that would preclude its maintenance as a class

18  action.

19  ## CAUSES OF ACTION

20  ### FIRST CAUSE OF ACTION
21  B**usiness and Professions Code § 17200,** *et seq.*
   **Unlawful Business Acts and Practices**

22  114.   Plaintiff incorporates by reference each allegation set forth herein.
23

24  115.   Defendant's conduct constitutes unlawful business acts and practices.

25  116.   Defendant sold Misbranded Food Products in California and the United States

26  during the Class Period.

27  117.   Defendant is a corporation and, therefore, each is a "person" within the meaning of

28

the Sherman Law.

118.    Defendant's business practices are unlawful under § 17200, *et seq*. by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law (Article 6).

119.    Defendant's business practices are unlawful under § 17200, *et seq*. by virtue of Defendant's violations of § 17500, *et seq*., which forbids untrue and misleading advertising.

120.    Defendant's business practices are unlawful under § 17200, *et seq*. by virtue of Defendant's violations of the Consumer Legal Remedies Act, Cal. Civ. Code. § 1750 *et seq*.

121.    Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless. Plaintiffs and the class paid a premium price for the Misbranded Food Products.

122.    As a result of Defendant's illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

123.    Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.

124.    As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

## SECOND CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### <u>Unfair Business Acts and Practices</u>

125.    Plaintiff incorporates by reference each allegation set forth herein.

126.    Defendant's conduct as set forth herein constitutes unfair business acts and practices.

127.    Defendant sold Misbranded Food Products in California and the United States during the Class Period.

128.    Plaintiff and members of the Class suffered substantial injuries by virtue of buying Defendant's Misbranded Food Products that they would not have purchased absent Defendant's illegal conduct as set forth herein.

129.    Defendant's deceptive marketing, advertising, packaging, and labeling of its Misbranded Food Products and its sale of unsalable Misbranded Food Products that were illegal to possess were of no benefit to consumers, and the harm to consumers and competition is substantial.

130.    Defendant sold Plaintiff and the Class products that were not capable of being legally sold or held and that were legally worthless.

131.    Plaintiff and the Class who purchased Defendant's Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

132.    The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefore. Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.  Plaintiffs and the class paid a premium price for the Misbranded Food Products.

133.    As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's

1    ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by

2    Plaintiff and the Class.

3

4                               **THIRD CAUSE OF ACTION**
                      **Business and Professions Code § 17200, *et seq.***
5                      <u>**Fraudulent Business Acts and Practices**</u>

6        134.    Plaintiff incorporates by reference each allegation set forth herein.

7        135.    Defendant's conduct as set forth herein constitutes fraudulent business practices

8    under California Business and Professions Code sections § 17200, *et seq.*

9        136.    Defendant sold Misbranded Food Products in California and the United States

10   during the Class Period.

11       137.    Defendant's misleading marketing, advertising, packaging, and labeling of the

12   Misbranded Food Products and misrepresentations that the products were salable, capable of legal

13   possession, and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff

14   and members of the Class were deceived.  Defendant has engaged in fraudulent business acts and

15   practices.

16       138.    Defendant's fraud and deception caused Plaintiff and the Class to purchase

17   Defendant's Misbranded Food Products that they would otherwise not have purchased had they

18   known the true nature of those products.

19       139.    Defendant sold Plaintiff and the Class Misbranded Food Products that were not

20   capable of being sold or held legally and that were legally worthless. Plaintiff and the Class paid a

21   premium price for the Misbranded Food Products.

22       140.    As a result of Defendant's conduct as set forth herein, Plaintiff and the Class,

23   pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

24   conduct by Defendant, and such other orders and judgments which may be necessary to disgorge

1    Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food

2    Products by Plaintiff and the Class.

3                              **FOURTH CAUSE OF ACTION**
                     **Business and Professions Code § 17500, *et seq.***
4                        <u>**Misleading and Deceptive Advertising**</u>

5        141.    Plaintiff incorporates by reference each allegation set forth herein.

6        142.    Plaintiff asserts this cause of action for violations of California Business and

7    Professions Code § 17500*, et seq.* for misleading and deceptive advertising against Defendant.

8        143.    Defendant sold Misbranded Food Products in California and the United States

9
10   during the Class Period.

11       144.    Defendant engaged in a scheme of offering Misbranded Food Products for sale to

12   Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and

13   other promotional materials. These materials misrepresented and/or omitted the true contents and

14   nature of Defendant's Misbranded Food Products. Defendant's advertisements and inducements

15   were made within California and come within the definition of advertising as contained in

16   Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and

17   promotional materials, were intended as inducements to purchase Defendant's Misbranded Food

18   Products and are statements disseminated by Defendant to Plaintiff and the Class that were

19
20   intended to reach members of the Class.  Defendant knew, or in the exercise of reasonable care

21   should have known, that these statements were misleading and deceptive as set forth herein.

22       145.    In furtherance of their plan and scheme, Defendant prepared and distributed within

23   California and nationwide via product packaging and labeling, and other promotional materials,

24   statements that misleadingly and deceptively represented the composition and the nature of

25   Defendant's Misbranded Food Products. Plaintiff and the Class necessarily and reasonably relied

26   on Defendant's materials, and were the intended targets of such representations.

27

28

146.    Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

147.    As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class.  Misbranded products cannot be legally sold or held and are legally worthless.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.

148.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**Untrue Advertising**

149.    Plaintiff incorporates by reference each allegation set forth herein.

150.    Plaintiff asserts this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

151.    Defendant sold Misbranded Food Products in the United States during the Class Period.

152.    Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials. These materials misrepresented and/or omitted the true contents and

nature of Defendant's Misbranded Food Products. Defendant's advertisements and inducements were made in California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials, were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiff and the Class. Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

153.    In furtherance of its plan and scheme, Defendant prepared and distributed, in California and nationwide, via product packaging and labeling, and other promotional materials, statements that falsely advertised the ingredients contained in Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products. Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

154.    Defendant's conduct in disseminating untrue advertising throughout California and nationwide deceived Plaintiff and members of the Class by obfuscating the contents, nature, and quality of Defendant's Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

155.    As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held and are legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

156.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

1

2

### SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

3        157.    Plaintiff incorporates by reference each allegation set forth herein.

4        158.    This cause of action is brought pursuant to the CLRA. Defendant's violations of

5    the CLRA were willful, oppressive, and fraudulent, thus supporting an award of punitive

6    damages.

7        159.    Consequently, Plaintiff and the Class are entitled to actual and punitive damages

8    against Defendant for their violations of the CLRA.  In addition, pursuant to Cal. Civ. Code §

9    1782(a)(2), Plaintiff and the Class are entitled to an order enjoining the above-described acts and

10    practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys'

11

12    fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code

13    § 1780.

14        160.    Defendant's actions, representations, and conduct have violated, and continue to

15    violate, the CLRA because they extend to transactions that are intended to result, or which have

16    resulted, in the sale of goods or services to consumers.

17

18        161.    Defendant sold Misbranded Food Products in California during the Class Period.

19        162.    Plaintiff and members of the Class are "consumers" as that term is defined by the

20    CLRA in Cal. Civ. Code §1761(d).

21        163.    Defendant's Misbranded Food Products were and are "goods" within the meaning

22    of Cal. Civ. Code §1761(a).

23

24        164.    By engaging in the conduct set forth herein, Defendant violated and continues to

25    violate Section 1770(a)(5), of the CLRA, because Defendant's conduct constitutes unfair methods

26    of competition and unfair or fraudulent acts or practices, in that they misrepresent the particular

27    ingredients, characteristics, uses, benefits, and quantities of the goods.

28

165.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant misrepresents the particular standard, quality, or grade of the goods.

166.    By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant advertises goods with the intent not to sell the goods as advertised.

167.    By engaging in the conduct set forth herein, Defendant has violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices, in that Defendant represents that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

168.    Plaintiff requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

169.    Pursuant to Section 1782(a) of the CLRA, on June 19, 2012, Plaintiff's counsel served Defendant with notice of Defendant's violations of the CLRA. As authorized by Defendant's counsel, Plaintiff's counsel served Defendant by certified mail, return receipt requested. Defendant has not responded.

170.    Plaintiff makes certain allegations in this Second Amended Complaint that were not included in the original Complaint filed on May 11, 2012, and were not included in Plaintiff's CLRA demand notice.

171.     This cause of action does not currently seek monetary relief and is limited solely to injunctive relief, as to Defendant's violations of the CLRA not included in the original Complaint. Plaintiff intends to amend to seek monetary relief in accordance with the CLRA after providing Defendant with notice of Plaintiff's new allegations pursuant to Cal. Civ. Code § 1782.

172.     At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendant were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

173.     Consequently, Plaintiff and the class will be entitled to actual and punitive damages against Defendant for its violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the class will be entitled to an order enjoining the above described acts and practices, providing restitution to Plaintiff and the class, ordering payment of costs and attorney's fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of her claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendant as follows:

A.     For an order certifying this case as a class action and appointing Plaintiff and her Counsel to represent the Class;

B.     For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action;

C.     For an order requiring Defendant to immediately cease and desist from selling its Misbranded Food Products in violation of law; enjoining Defendant from continuing to manufacture, label, market, advertise, distribute, and sell these products in the unlawful manner

described herein, and ordering Defendant to engage in corrective action;

       D.     For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

       E.     For an order awarding attorneys' fees and costs;

       F.     For an order awarding punitive damages;

       G.     For an order awarding pre-and post-judgment interest; and

       H.     For an order providing such further relief as this Court deems proper.

Dated: October 7, 2013.          Respectfully submitted,

                          *David Shelton*
                       David Shelton (admitted *pro hac vice*)
                       DAVID SHELTON PLLC
                       1223 Jackson Avenue, Suite 202
                       P.O. Box 2541
                       Oxford, MS 38655
                       662-281-1212
                       david@davidsheltonpllc.com

                       Ben F. Pierce Gore (SBN 128515)
                       PRATT & ASSOCIATES
                       1871 The Alameda, Suite 425
                       San Jose, CA 95126
                       (408) 429-6506
                       pgore@prattattorneys.com

## CERTIFICATE OF SERVICE

     I hereby certify that I have this day filed and served through the Court's ECF system a true and correct copy of the foregoing.

                          *David Shelton*