1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATALIA BRUTON, individually and on behalf of all others similarly situated, | Case No.: 12-CV-02412-LHK |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT |
| v. | |
| GERBER PRODUCTS COMPANY, | |
| Defendant. | |

Plaintiff Natalia Bruton ("Bruton" or "Plaintiff") brings this putative class action against Gerber Products Company ("Gerber" or "Defendant"), alleging that Gerber violated federal and state law by making false and misleading claims on its food product labels. Presently before the Court is Gerber's Motion to Dismiss Bruton's Second Amended Complaint. ECF No. 65. Bruton opposes, ECF No. 77, and Gerber replied, ECF No. 78. Having considered the submissions of the parties and the relevant law, the Court hereby GRANTS in part and DENIES in part Gerber's Motion to Dismiss the Second Amended Complaint.

## I.    BACKGROUND

### A.    Factual Allegations

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Gerber claims to be "the world's most trusted name in baby food," and reportedly controls between 70 and 80 percent of the baby food market in the United States. Second Am. Compl. ("SAC") ECF No. 62 ¶ 27. Gerber packages and sells retail food products, such as puree baby food, snacks, yogurts, side dishes, and beverages, specifically intended for infants and children under two years of age. *Id.* ¶ 28. Gerber organizes its products by "stages," including: "Birth+," "Supported Sitter," "Sitter," "Crawler," "Toddler," and "Preschooler." *Id.* All of the Gerber product categories other than "Preschooler" describe children under two years of age. *Id.*

Bruton is a California resident who is "concerned about the nutritional content of the food she purchase[s] for her child's consumption." *Id.* ¶¶ 20, 81. At various times within the past four years, Bruton purchased many of Gerber's food products that are intended for children under the age of two. *Id.* ¶¶ 20, 82. Specifically, Bruton contends that she purchased the following products ("Purchased Products"): (1) Gerber Nature Select 2nd Foods Fruit–Banana Plum Grape; (2) Gerber Nature Select 2nd Foods Fruit–Apples and Cherries; (3) Gerber Nature Select 2nd Foods Vegetables–Carrots; (4) Gerber Nature Select 2nd Foods Spoonable Smoothies–Mango; (5) Gerber Yogurt Blends Snack–Strawberry; (6) Graduates Lil' Crunchies–Mild Cheddar; (7) Graduates Fruit Puffs–Peach; (8) Graduates Wagon Wheels–Apple Harvest; (9) Graduates for Toddlers Animal Crackers–Cinnamon Graham; (10) Graduates for Toddlers Fruit Strips–Strawberry; (11) Gerber Nature Select 2nd Foods Vegetables–Sweet Potatoes & Corn; (12) Gerber Organic SmartNourish 2nd Foods–Banana Raspberry Oatmeal; (13) Gerber Organic SmartNourish 2nd Foods–Butternut Squash & Harvest Apple with Mixed Grains; (14) Gerber Organic SmartNourish 2nd Foods– Farmer's Market Vegetable Blend with Mixed Grains; and (15) Gerber Single Grain Cereals– Oatmeal. *Id.* ¶ 2. In addition to bringing claims regarding the Purchased Products, Bruton also asserts claims related to dozens of additional products that Bruton alleges are substantially similar to the Purchased Products, in that they are similar products that make similar label misrepresentations and violate the same federal and California labeling laws. *Id.* ¶ 3. Bruton refers to these additional products as the "Substantially Similar Products." *Id.*; *see also* SAC Ex. A, ECF No. 62-1 (identifying the Substantially Similar Products).

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Before purchasing Defendants' products for her child, Bruton allegedly read and relied on Gerber's labels, which she contends are "misbranded." *Id.* ¶¶ 7, 17, 83. At the point of sale, Bruton contends that she "did not know, and had no reason to know, that Defendant's products were misbranded" and "would not have bought the products had she known the truth about them." *Id.* ¶ 87. Bruton alleges that Gerber made, and continues to make, two types of unlawful and deceptive claims on its product labels: "nutrient content claims," *id.* ¶¶ 59-68, and "sugar-related claims," *id.* ¶¶ 69-80.

### 1.     Nutrient Content Claims

First, Bruton challenges Gerber's use of "nutrient content claims," which are claims about specific nutrients contained in a product that, pursuant to Section 403 of the Food, Drug, and Cosmetic Act ("FDCA"), must be made in accordance with federal regulations. *Id.* ¶¶ 51-53; *see* 21 U.S.C. § 343(r)(1)(A) (defining "nutrition levels and health-related claims" as pertaining to "a food intended for human consumption which is offered for sale and for which a claim is made in the label or labeling of the food which expressly or by implication . . . characterizes the level of any nutrient"). California expressly adopted the requirements of Section 403 of the FDCA in Section 110670 of the Sherman Food, Drug, and Cosmetic Law (the "Sherman Law"). *See* Cal. Health & Safety Code § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrient content or health claims as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the [FDCA] and the regulations adopted pursuant thereto.").

Bruton alleges that Gerber makes nutrient content claims on virtually all Gerber food products, despite the fact that the Food and Drug Administration ("FDA") authorizes nutrient content claims on foods for adults that are not permitted on foods for children under age two. *See* SAC ¶ 60 ("Nutrient content claims on products intended to be consumed by children under two are barred because the nutritional needs of children are very different from those of adults, and thus such nutritional claims on infant and toddler food can be highly misleading."); *see* 21 C.F.R. § 101.13(b)(3) ("Except for claims regarding [certain] vitamins and minerals . . . no nutrient

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

1   content claims may be made on food intended specifically for use by infants and children less than

2   2 years of age unless the claim is specifically provided for" by particular regulations).

3            Bruton specifically asserts that Defendants make misbranded nutrient content claims that

4   fall into three categories: (a) "Excellent Source" and "Good Source" claims; (b) "Healthy" claims;

5   and (c) "No Added Sugar" claims.

6       • *"Excellent Source" and "Good Source" claims*: Bruton contends that Gerber
7         food products intended for children under two that claim to be an "Excellent
          Source" or a "Good Source" of various vitamins and minerals are "misbranded
8         within the meaning of the FDCA § 403(r)(1)(A) and 21 U.S.C. § 343(r)(1)(A)
          because their labeling includes unauthorized nutrient content claims." SAC
9         ¶ 59(a).

10      • *"Healthy" claims*: Bruton also asserts that Gerber food products intended for
11        children under two that make statements such as, "As Healthy As Fresh,"
          "Nutrition for Healthy Growth & Natural Immune Support," and "Supports
12        Healthy Growth & Development" are misbranded because they bear the nutrient
          content claim "healthy" despite the fact that federal regulations do not allow
13        such claims for products specifically intended for children under two years of
14        age. *Id.* ¶ 59(b).

15      • *"No Added Sugar" claims*: Bruton further alleges that Gerber food products that
16        claim to have "No Added Sugar" or "No Added Refined Sugar" are misbranded
          because "[s]uch nutrient content claims may not be made on food products
17        intended for children under two." *Id.* ¶ 59(c).

18              2.       **Sugar-Related Claims**

19          Bruton additionally alleges that many of Gerber's products that are labeled with a "No

20  Added Sugar" or "No Added Refined Sugar" nutrient content claim contain sufficiently high levels

21  of calories that federal law requires that the claims be accompanied by a disclosure statement

22  warning of the higher caloric level of the products. *Id.* ¶ 69 (citing 21 C.F.R. § 101.60(c)(2)).

23  Because Gerber does not place a disclosure statement on food products containing sufficient

24  calories to trigger the FDA's disclosure requirement, Bruton asserts that Gerber's product labels

25  violate federal and California law. SAC ¶¶ 69-74. Bruton contends that, "[b]ecause consumers may

26  reasonably be expected to regard terms that represent that the food contains 'no added sugar' or

27  sweeteners as indicating a product which is low in calories or significantly reduced in calories,

28

4

1    consumers are misled when foods that are not low-calorie as a matter of law are falsely

2    represented." *Id.* ¶ 76.

3        **B.    Putative Class Claims**

4        Bruton seeks to bring this putative class action, pursuant to Federal Rule of Civil Procedure

5    23(b)(2) and 23(b)(3), on behalf of a nationwide class consisting of all persons who, within the last

6    four years, purchased any of the Gerber food products identified in Exhibit A of the SAC. *Id.*

7    ¶ 103.

8        Bruton contends that, by manufacturing, advertising, distributing, and selling misbranded

9    food products, Gerber has violated California Health & Safety Code Sections 109885, 110390,

10   110395, 110398, 110400, 110660, 110665, 110670, 110705, 110760, 110765, and 110770. *Id.*

11   ¶¶ 94-100. In addition, Bruton asserts that Gerber has violated the standards set by 21 C.F.R.

12   §§ 101.13, 101.54, 101.60, and 101.65, which have been adopted by reference into the Sherman

13   Law. *Id.* ¶ 101. Consequently, the SAC alleges the following causes of action: (1) violation of

14   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, for

15   unlawful, unfair, and fraudulent business acts and practices (Counts 1, 2, and 3), SAC ¶¶ 114-140;

16   (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. and Prof. Code §§ 17500 *et*

17   *seq.*, for misleading, deceptive, and untrue advertising (Counts 4 and 5), SAC ¶¶ 141-156; and (3)

18   violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* (Count

19   6), SAC ¶¶ 157-173.

20       **C.    Procedural History**

21       Bruton filed her Original Complaint against Gerber, Nestlé Holdings, Inc., and Nestlé USA,

22   Inc. on May 11, 2012. ECF No. 1. On July 2, 2012, Bruton filed a Notice of Voluntary Dismissal

23   of Defendant Nestlé Holdings, Inc. ECF No. 9. Gerber and Nestlé USA, Inc. then filed a Motion to

24   Dismiss on August 31, 2012. ECF No. 18. Rather than responding to the Motion to Dismiss,

25   Bruton filed a First Amended Complaint on September 21, 2012. ECF No. 26.

26       Gerber and Nestlé USA, Inc. subsequently withdrew their Motion to Dismiss the Original

27   Complaint as moot, ECF No. 27, and filed a Motion to Dismiss the First Amended Complaint, ECF

28

**United States District Court**
For the Northern District of California

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

1   No. 28. On September 6, 2013, the Court Granted in part and Denied in part Gerber and Nestlé

2   USA, Inc.'s Motion to Dismiss. ("MTD Order") ECF No. 57.

3        Bruton filed the SAC on October 7, 2013, this time naming Gerber as the sole defendant.[1]

4   ECF No. 62. Gerber filed the instant Motion to Dismiss the SAC on October 31, 2013. ("Mot.")

5   ECF No. 65. Gerber accompanied its Motion with a Request for Judicial Notice. ECF No. 66.

6   Bruton filed an Opposition to Gerber's Motion to Dismiss on November 26, 2013, ("Opp'n") ECF

7   No. 77, to which Gerber replied on December 16, 2013, ("Reply") ECF No. 78.

8   **II.    LEGAL STANDARDS**

9        **A.    Rule 12(b)(1)**

10       A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

11  to Federal Rule of Civil Procedure 12(b)(1). A motion to dismiss for lack of subject matter

12  jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish

13  subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th

14  Cir. 2003). If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court

15  lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a*

16  *Better Env't*, 523 U.S. 83, 101-02 (1998). In considering a Rule 12(b)(1) motion, the Court "is not

17  restricted to the face of the pleadings, but may review any evidence, such as affidavits and

18  testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United*

19  *States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject

20  matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the

21  court's jurisdiction, *see Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir.

22  2010), by putting forth "the manner and degree of evidence required" by whatever stage of the

23  litigation the case has reached, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also*

24  *Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011) (at the motion to

25  dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts

26  plausibly explaining" why the standing requirements are met).

27  _____

[1] On November 8, 2013, the parties stipulated to the dismissal of Nestlé USA, Inc. with prejudice.
28  ECF No. 75.

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

### B.  Rule 8(a)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted).

### C.  Rule 9(b)

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

1    Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

2    Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with

3    particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor*

4    *Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy Rule's 9(b)'s heightened standard, the

5    allegations must be "specific enough to give defendants notice of the particular misconduct which

6    is alleged to constitute the fraud charged so that they can defend against the charge and not just

7    deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.

8    1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific

9    content of the false representations as well as the identities of the parties to the misrepresentations."

10   *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks

11   omitted). The plaintiff must set forth what is false or misleading about a statement, and why it is

12   false." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by*

13   *statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001).

14        **D.       Leave to Amend**

15        If the Court determines that the complaint should be dismissed, it must then decide whether

16   to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

17   "should be freely granted when justice so requires," bearing in mind that "the underlying purpose

18   of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

19   technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

20   marks omitted). Nonetheless, a court "may exercise its discretion to deny leave to amend due to

21   'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure

22   deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and]

23   futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir.

24   2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

25   **III.     DISCUSSION**

26        Gerber moves to dismiss the SAC on various grounds, which the Court organizes as

27   follows. First, Gerber contends that Bruton lacks constitutional and statutory standing to pursue her

28

8

1   claims. Mot. at 3-6, 12-15, 20-24. Second, Gerber moves to dismiss under Federal Rule of Civil

2   Procedure 12(b)(6) for failure to state a claim for violations of the UCL, FAL, and CLRA. *Id.* at 7-

3   1215-18. Third, Gerber argues that Bruton fails to plead when she purchased the Purchased

4   Products with particularity, as required by Federal Rule of Civil Procedure 9(b). *Id.* at 18-19.

5   Finally, Gerber asserts that Bruton may not pursue California state law claims on behalf of out-of-

6   state consumers. *Id.* at 24-25. For the following reasons, the Court GRANTS in part and DENIES

7   in part Gerber's Motion to Dismiss for lack of standing; GRANTS in part and DENIES in part

8   Gerber's Motion to Dismiss for failure to state a claim; DENIES Gerber's Motion to Dismiss for

9   failure to plead purchases with particularity under Rule 9(b); and DENIES Gerber's Motion to

10  Dismiss Bruton's nationwide class claims.

11          **A.      Request for Judicial Notice**

12          At the outset, the Court addresses Gerber's Request for Judicial Notice. Gerber asks the

13  Court to take judicial notice of 171 exhibits that purport to show the product labels for the

14  Purchased and Substantially Similar Products as they existed over the last four years. *See* ("RJN")

15  ECF Nos. 66-73, Exs. 1-171. Since Gerber contends that many of these product labels have

16  changed during this time, Mot. at 19, many of Gerber's exhibits contain multiple product labels for

17  the same product. *See, e.g.*, RJN Ex. 18 (showing five different labels for "Gerber Nature Select

18  2nd Foods Spoonable Smoothies—Hawaiian Delight").

19          A district court generally may not consider any material beyond the pleadings in ruling on a

20  Rule 12(b)(6) motion. However, a court may take judicial notice of documents referenced in the

21  complaint, as well as matters in the public record, without converting a motion to dismiss into one

22  for summary judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001). A matter

23  may be judicially noticed if it is either "generally known within the trial court's territorial

24  jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot

25  reasonably be questioned." Fed. R. Evid. 201(b). In addition, under the "incorporation by

26  reference" doctrine, a district court may consider "documents whose contents are alleged in a

27  complaint and whose authenticity no party questions, but which are not physically attached to the

28

9

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

1    [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (alteration in

2    original) (internal quotation marks omitted).

3         Although the Court has previously taken judicial notice of images of product packaging in

4    this case, *see* MTD Order at 6 n.1, as well in other food misbranding cases, *see, e.g.*, *Gustavson v.*

5    *Wrigley Sales Co.*, --- F. Supp. 2d ---, 2013 WL 5201190, at *5 n.1 (N.D. Cal. Sept. 16, 2013);

6    *Brazil v. Dole Food Co.* (*Brazil I*), 935 F. Supp. 2d 947, 963 & n.4 (N.D. Cal. 2013), the Court

7    concludes that Gerber's present request goes beyond the scope of matters that may be properly

8    subject to judicial notice and instead asks the Court to adjudicate factual disputes between the

9    parties. Initially, the Court notes that Gerber does not provide any information that would

10   authenticate the images contained in its Request for Judicial Notice or confirm that products with

11   these labels were actually sold during the class period. As a result, the Court cannot say that these

12   label images constitute a matter that "can be accurately and readily determined from sources whose

13   accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Furthermore, Gerber seeks to

14   introduce these product label images to dispute the SAC's factual allegations that the Purchased

15   and Substantially Similar Products make certain label statements, *see* Mot. at 20-21, and also to

16   establish that the product labels have changed since the start of the class period, *see id.* at 19. These

17   are questions of fact that are subject to reasonable dispute and which the Court concludes are not

18   suitable for resolution at the motion to dismiss stage. Accordingly, Gerber's Request for Judicial

19   Notice is DENIED.

20        **B.      Standing**

21        Gerber argues that the SAC must be dismissed because Bruton lacks standing, under either

22   Article III of the U.S. Constitution or the UCL, FAL, and CLRA, to pursue her claims. Gerber

23   raises multiple challenges to Bruton's standing, arguing that: (1) Bruton lacks Article III standing

24   to pursue claims regarding the Substantially Similar Products that Bruton did not personally

25   purchase, Mot. at 20-24; (2) Bruton lacks standing to pursue claims based on statements on the

26   Gerber website that Bruton did not view, *id.* at 24; (3) Bruton lacks standing to bring claims under

27   the UCL, FAL, and CLRA in the absence of allegations that she actually relied on, and was injured

28

                                              10

     Case No.: 12-CV-02412-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
     SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

1    by, Gerber's allegedly unlawful and misleading label statements, *id.* at 12-15; and (4) Bruton lacks

2    standing under the UCL, FAL, and CLRA, because her allegations of reliance and injury are

3    "entirely implausible," *id.* at 3-6. The Court discusses each of Gerber's standing arguments in turn.

### 1.    Legal Standard

#### a.    Article III Standing

6    To have Article III standing, a plaintiff must plead and prove that he or she has suffered

7    sufficient injury to satisfy the "case or controversy" requirement of Article III of the United States

8    Constitution. *See Clapper v. Amnesty Int'l*, --- U.S. ---, 133 S. Ct. 1138, 1146 (2013) ("One

9    element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have

10   standing to sue.'" (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997))). Therefore, for Article III

11   standing, a plaintiff must establish: (1) injury-in-fact that is concrete and particularized, as well as

12   actual or imminent; (2) that this injury is fairly traceable to the challenged action of the defendant;

13   and (3) that this injury is redressable by a favorable ruling from the court. *See Monsanto Co. v.*

14   *Geertson Seed Farms*, --- U.S. ---, 130 S. Ct. 2743, 2752 (2010); *Friends of the Earth, Inc. v.*

15   *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

#### b.    Statutory Standing

17   The CLRA, UCL, and FAL all require a plaintiff to demonstrate standing. To have standing

18   under the CLRA, a plaintiff must allege that she relied on the defendant's alleged

19   misrepresentations and that she suffered injury as a result. *See, e.g.*, *Durell v. Sharp Healthcare*,

20   183 Cal. App. 4th 1350, 1367 (2010) (plaintiff must have "relied on a[] representation by"

21   defendant in order to have standing to bring CLRA claim based on a misrepresentation); *Aron v. U-*

22   *Haul Co.*, 143 Cal. App. 4th 796, 802 (2006) ("To have standing to assert a claim under the CLRA,

23   a plaintiff must have suffer[ed] any damage as a result of the . . . practice declared to be unlawful."

24   (alterations in original) (internal quotation marks omitted)).

25   Likewise, to establish standing under the UCL or FAL, a plaintiff must demonstrate that she

26   "suffered injury in fact and [] lost money or property as a result of the unfair competition." Cal.

27   Bus. & Prof. Code § 17204; *see also id.* § 17535 (imposing an identical standing requirement for

28

11

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

1  FAL actions). Interpreting this statutory language—which California voters added to the UCL and

2  FAL in 2004 through the passage of Proposition 64, *see In re Tobacco II Cases*, 46 Cal. 4th 298,

3  314 (2009)—in relation to the UCL, California courts have held that when the "unfair competition"

4  underlying a plaintiff's UCL claim consists of a defendant's misrepresentation, a plaintiff must

5  have actually relied on the misrepresentation, and suffered economic injury as a result of that

6  reliance, in order to have standing to sue. *See id.* at 326.

7         While the California Supreme Court first announced this actual reliance requirement with

8  regard to claims brought under the UCL's fraud prong, *see id.* ("[W]e conclude that [Section

9  17204, as amended by Proposition 64] imposes an actual reliance requirement on plaintiffs

10  prosecuting a private enforcement action under the UCL's fraud prong."), California courts have

11  subsequently extended the actual reliance requirement to claims brought under the UCL's unlawful

12  prong to the extent "the predicate unlawful conduct is based on misrepresentations." *Durell*, 183

13  Cal. App. 4th at 1355; *accord Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011).

14  Moreover, in *Kwikset*, the California Supreme Court indicated that the actual reliance requirement

15  applies *whenever* a UCL action is predicated on misrepresentations. 51 Cal. 4th at 326 & n.9 ("The

16  theory of the case is that [defendant] engaged in misrepresentations and deceived consumers. Thus,

17  our remarks in *In re Tobacco II Cases* . . . concerning the cause requirement in deception cases, are

18  apposite." (citation omitted)). Thus, the Court concludes that the actual reliance requirement also

19  applies to claims under the UCL's unfair prong to the extent such claims are based on a

20  defendant's misrepresentations. *See In re Actimmune Mktg. Litig.*, No. 08-2376, 2010 WL

21  3463491, at *8 (N.D. Cal. Sept. 1, 2010) (holding "that a plaintiff must plead 'actual reliance,'

22  even if their [*sic*] claim arises under the unlawful or unfair prongs, so long as the pleadings assert a

23  cause of action grounded in misrepresentation or deception."), *aff'd*, 464 F. App'x 651 (9th Cir.

24  2011); *see also Kane v. Chobani, Inc.*, No. 12-2425, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19,

25  2013) (same).

26         A showing of actual reliance under the UCL requires a plaintiff to establish that "the

27  defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-

28

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

1   producing conduct." *Tobacco II*, 46 Cal. 4th at 326 (internal quotation marks omitted). "A plaintiff

2   may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's

3   conduct by showing that in its absence the plaintiff in all reasonable probability would not have

4   engaged in the injury-producing conduct." *Id.* (internal quotation marks omitted). While a plaintiff

5   need not demonstrate that the defendant's misrepresentations were "the sole or even the

6   predominant or decisive factor influencing his conduct," the misrepresentations must have "played

7   a substantial part" in the plaintiff's decisionmaking. *Id.* (internal quotation marks omitted). Further,

8   "a presumption, or at least an inference, of reliance arises wherever there is a showing that a

9   misrepresentation was material." *Id.* at 327.

10                  **2.        Analysis**

11                      **a.        Substantially Similar Products**

12          Gerber asserts that Bruton lacks Article III standing to sue over label claims made on the

13   Substantially Similar Products. Mot. at 20.[2] Gerber reasons that Bruton could not have been injured

14   by products she did not purchase, and that Bruton therefore cannot establish injury-in-fact. *Id.* As

15   the Court noted in its previous MTD Order, courts are divided over whether a plaintiff may have

16   standing to assert claims related to products the plaintiff did not personally purchase. MTD Order

17   at 28. Some courts have dismissed such claims for lack of standing. *See, e.g.*, *Granfield v. NVIDIA*

18   *Corp.*, No. 11-5403, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff

---

19   [2] Bruton contends that Gerber's Motion to Dismiss the SAC on standing grounds, as well as for

20   other reasons already considered, and rejected, in the Court's previous MTD Order amounts to an
     improper motion to reconsider this Court's prior ruling. See Opp'n at 7-8. Not so. Gerber is not

21   seeking reconsideration of the Court's prior Order, but rather is responding to Bruton's new
     complaint. Under Ninth Circuit law, "an amended complaint supercedes the original complaint and

22   renders it without legal effect," *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) (en
     banc), such that a defendant may challenge an amended complaint in its entirety, *see Sidebotham v.*

23   *Robison*, 216 F.2d 816, 823 (9th Cir. 1954) ("[O]n filing a third amended complaint which carried
     over the causes of action of the second amended complaint, the appellees were free to challenge the

24   entire new complaint."); *see also In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection*
     *HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010) (holding that defendant was

25   free to move for dismissal of entire amended complaint, including claim that had already withstood
     a previous motion to dismiss). That said, to the extent Gerber is simply rehashing arguments this

26   Court has already rejected in this case, those arguments fare little better on this occasion than they
     did when raised as part of Gerber's Motion to Dismiss Bruton's First Amended Complaint. *See,*

27   *e.g.*, *infra* Parts III.B.2.d, C.1-3.

28

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

1    asserts claims based both on products that she purchased and products that she did not purchase,

2    claims relating to products not purchased must be dismissed for lack of standing."); *Carrea v.*

3    *Dreyer's Grand Ice Cream, Inc.*, No. 10-1044, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011)

4    (same), *aff'd on other grounds*, 475 F. App'x 113 (9th Cir. 2012). Other courts view the question

5    of whether a plaintiff may sue over products she did not purchase as a question of typicality under

6    Federal Rule of Civil Procedure 23(a)(3) rather than of standing and thus defer ruling on this

7    question until the class certification stage. *See, e.g.*, *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d

8    1155, 1161 (C.D. Cal. 2012); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012).

9    Still other courts "hold that a plaintiff may have standing to assert claims for unnamed class

10   members based on products he or she did not purchase so long as the products and alleged

11   misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d

12   861, 869 (N.D. Cal. 2012) (citing cases); *see also, e.g.*, *Colucci v. ZonePerfect Nutrition Co.*, No.

13   12-2907, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012); *Astiana v. Dreyer's Grand Ice*

14   *Cream, Inc.*, No. 11-2910, 2012 WL 2990766, at *11-13 (N.D. Cal. July 20, 2012).

15            This Court has generally taken this latter approach when analyzing standing challenges in

16   food misbranding cases. *See Werdebaugh v. Blue Diamond Growers*, No. 12-2724, 2013 WL

17   5487236, at *13-14 (N.D. Cal. Oct. 2, 2013); *Brazil v. Dole Food Co.* (*Brazil II*), No. 12-1831,

18   2013 WL 5312418, at *7-8 (N.D. Cal. Sept. 23, 2013); *Kane*, 2013 WL 5289253 at *10-11. As

19   explained in these prior orders, in asserting claims based on products a plaintiff did not purchase,

20   but which are nevertheless substantially similar to products a plaintiff *did* purchase, a plaintiff is

21   not suing over an injury she did not suffer. Rather, a plaintiff in that scenario is suing over an

22   injury she personally suffered and asserting that others who purchased similar products suffered

23   substantially the same injury, even if the products that caused the injury were not identical in every

24   respect. *See, e.g.*, *Brazil II*, 2013 WL 5312418 at *7; *see also Armstrong v. Davis*, 275 F.3d 849,

25   867 (9th Cir. 2001) ("When determining what constitutes the same type of relief or the same kind

26   of injury, we must be careful not to employ too narrow or technical an approach. Rather, we must

27   examine the questions realistically: we must reject the temptation to parse too finely, and consider

28

14

instead the context of the inquiry."), *abrogated on other grounds by Johnson v. California*, 543

U.S. 499, 504–05 (2005). Accordingly, the Court rejects Gerber's contention that Bruton lacks

Article III standing to sue over the Substantially Similar Products merely because Bruton did not

personally purchase every product identified in the SAC.

Gerber argues that even if the Court concludes that Bruton has standing to pursue claims

related to products she did not purchase (but which are substantially similar to products she did

purchase) the SAC still fails to adequately allege substantial similarity between the Purchased and

Substantially Similar products. Mot. at 20. In particular, Gerber contends that Bruton fails to

plausibly allege that the following Substantially Similar Products are actually similar in kind to any

of the Purchased Products: (1) various beverages, including Graduate Fruit Splashers, Gerber Lil'

Water, Gerber Yogurt Juice, Gerber 100% Juice, and Gerber Organic 100% Juice; (2) Gerber fruit

or vegetable "pick-ups," which are cut-up pieces of fruit or vegetables; (3) Graduate Fruit and

Veggie Melts, which are dehydrated fruits and vegetables; and (4) Graduate Grabbers, which are

squeezable fruit products. *Id.* at 22. With respect to these categories of products, the Court agrees

with Gerber that the SAC fails to adequately allege how these products are substantially similar to

any of the Purchased Products. The SAC does not explain how these products are similar to the

Purchased Products, and unlike many of the other Substantially Similar Products—such as the

many flavors of the Gerber Nature Select 2nd Foods product, *see* SAC Ex. A—there is no obvious

similarity between these products and any of the products Bruton purchased. Accordingly, the

Court GRANTS Gerber's Motion to Dismiss as it relates to the above four categories of

Substantially Similar Products. *Accord Wilson v. Frito-Lay N. Am., Inc.*, --- F. Supp. 2d ---, 2013

WL 5777920, at *4-5 (N.D. Cal. Oct. 24, 2013) (dismissing plaintiff's claims as to non-purchased

products because plaintiff failed to adequately allege that the purchased and non-purchased

products were substantially similar). Given that Bruton has failed to explain how these categories

of products are substantially similar in kind to the Purchased Products in spite of having been

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

**United States District Court**
For the Northern District of California

1    warned in the Court's previous MTD Order that she would have to do so in order to survive a

2    renewed motion to dismiss, *see* MTD Order at 29, this dismissal is with prejudice.[3]

3           Furthermore, after reviewing Exhibit A to the SAC, the Court additionally concludes that

4    the SAC does not sufficiently allege that the following categories of products are substantially

5    similar to any of the Purchased Products: (1) Gerber Nature Select 1st Foods; (2) Gerber Nature

6    Select 3rd Foods; (3) Gerber Grain & Fruit; (4) Gerber Organic SmartNourish 1st Foods; (5)

7    Graduates–Arrowroot Cookies; (6) Graduate Breakfast Buddies; (7) Graduates for Toddlers–Cereal

8    Bars; and (8) Graduates Yogurt Melts. Accordingly, the Court DISMISSES Bruton's allegations

9    related to these categories of products as well. *Accord Wilson*, 2013 WL 5777920 at *4-5. Given

10   that Bruton has failed to explain how these categories of products are substantially similar in kind

11   to the Purchased Products in spite of having been warned in the Court's previous MTD Order that

12   she would have to do so in order to survive a renewed motion to dismiss, *see* MTD Order at 29,

13   this dismissal is with prejudice.

14                        **b.       Statements Bruton Did Not View**

15          Gerber next moves to dismiss Bruton's claims based on statements that appeared on the

16   Gerber website, which Bruton does not claim to have visited or viewed. Mot. at 24; *see also* Opp'n

17   at 21 (acknowledging that Bruton does not allege that she viewed the Gerber website). As Gerber

18   points out, although the Court dismissed Bruton's website claims for failure to plead actual

19   reliance, and thus standing, in its previous MTD Order, *see* MTD Order at 30, the SAC contains no

20

21   ───────────────────────

22   [3] Gerber additionally argues that Bruton's allegations related to the Substantially Similar Products
     fail because the chart identifying the Substantially Similar Products purportedly contains several
     inaccuracies and because some of the label statements are purportedly presented differently on

23   various products. Mot. at 20-22. The Court finds that these arguments raise disputes of fact not
     suitable for resolution on a motion to dismiss. Evaluating these additional arguments requires the

24   Court to make findings of fact concerning what the labels said at various points throughout the
     class period. The contents of the product labels are the subject of dispute, however, as is the

25   question of whether and when these labels changed over the course of the class period. *Compare*
     SAC Ex. A (stating that Gerber Nature Select 2nd Foods—Prunes and Apples makes an "Excellent

26   Source" claim), *with* Mot. at 21 (contending that this product does not make an "Excellent Source"
     claim). Such factual disputes are not appropriately resolved at the motion to dismiss stage, *see, e.g.*,

27   *Manzarek*, 519 F.3d at 1031, and the Court consequently declines to dismiss Bruton's claims
     regarding the Substantially Similar Products on these grounds.

28
                                                    16
     Case No.: 12-CV-02412-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
     SECOND AMENDED COMPLAINT

new allegations to support Bruton's standing to pursue claims based on statements made on the Gerber website. *See* Mot. at 24.

In response, Bruton states that she is not asserting any claims based on Gerber's website statements and that, instead, the SAC references the Gerber website "for facts relevant to her claim." Opp'n at 21. While certain paragraphs of the SAC cite the Gerber website as a source of background, and not as a basis for a distinct legal claim, *see, e.g.*, SAC ¶ 62 ("According to Gerber's own website, a 'sitter' is a child 6 to 7 months old."), the Court finds that other paragraphs of the SAC do appear to state claims based on Gerber's website statements, notwithstanding Bruton's disavowals. *See, e.g.*, *id.* ¶¶ 61 ("Gerber also continues to make the improper claims about their Puffs on their website."); 67 ("Defendant has also made the same unlawful claims on its websites and in its advertising in violation of federal and California laws."). Because Bruton does not have standing to assert claims based on statements she did not view, *see* *Kwikset*, 51 Cal. 4th at 326 (a plaintiff must "demonstrate actual reliance on the allegedly deceptive or misleading statements"); *Durell*, 183 Cal. App. 4th at 1363 (holding that there was no reliance where "SAC [did] not allege [plaintiff] ever visited [defendant's] Web site"), and because the SAC appears to continue to assert claims based on Gerber's website statements, the Court GRANTS Gerber's Motion to Dismiss Bruton's claims based on website statements Bruton did not view. As Bruton has failed to adequately allege standing with respect to her website claims even after having had an opportunity to amend her complaint, this dismissal is with prejudice.

### c.       Standing Absent Allegations of Actual Reliance

Gerber next argues that Bruton's claims must be dismissed to the extent Bruton seeks relief under the UCL's unlawful prong without also alleging that she relied on and was injured by Gerber's allegedly unlawful label statements. Mot. at 12. Bruton responds by reiterating her assertion from the SAC that reliance and injury are not necessary elements of a UCL unlawful claim. Opp'n at 12; SAC ¶¶ 10-11. Bruton also argues that she has, in any event, adequately pleaded reliance and injury with regard to all of her claims, including her UCL unlawful claim. Opp'n at 12.

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

1    Although the Court ultimately agrees with Bruton that the SAC adequately pleads reliance

2 and injury for purposes of UCL, FAL, and CLRA standing, *see infra* Part III.B.2.d, because the

3 SAC asserts that reliance and injury are not required for standing under the UCL's unlawful prong,

4 the Court takes this opportunity to reiterate its position, stated in numerous other food misbranding

5 cases, that actual reliance and injury are required to establish statutory standing under the UCL's

6 unlawful prong whenever the underlying alleged misconduct is deceptive or fraudulent. *See Brazil*

7 *II*, 2013 WL 5312418, at *8-9; *Kane*, 2013 WL 5289253, at *9; *accord In re Actimmune*, 2010 WL

8 3463491, at *8; *Kwikset*, 51 Cal. 4th at 326. Here, the essence of Bruton's UCL claim is that

9 Gerber's labeling practices are misleading and deceptive. *See, e.g.*, SAC ¶¶ 30 ("Defendant

10 misbrands its baby food products by . . . making nutrient content claims that are strictly prohibited

11 by the [FDA], and by misleading purchasers into believing that its products are healthier . . . in

12 order to induce parents into purchasing Gerber products."); 68 ("The regulations relating to nutrient

13 content claims discussed herein are intended to ensure that consumers are not misled as to the

14 actual or relative levels of nutrients in food products."); 76 ("Because consumers may reasonably

15 be expected to regard terms that represent that the food contains 'no added sugar' or sweeteners as

16 indicating a product which is low in calories or significantly reduced in calories, consumers are

17 misled when foods that are not low-calorie as a matter of law are falsely represented . . . ."). Thus

18 Bruton must allege actual reliance and injury in order to have statutory standing to maintain a claim

19 under the UCL's unlawful prong. As set forth below, however, the Court concludes that Bruton

20 adequately pleads injury and reliance. *See infra* Part III.B.2.d.

### d.    Plausibility

22    Gerber finally argues that Bruton lacks standing to pursue her claims because Bruton's

23 allegations that she relied on and was deceived by Gerber's label statements are simply

24 implausible. Mot. at 3-6; Reply at 3-4. Gerber points out that Bruton claims to have reviewed the

25 labels of the Purchased Products prior to buying them. Mot. at 3 (quoting SAC ¶ 17 ("Plaintiff

26 reviewed the illegal nutrient content claims and sugar-related claims on the labels of each

27 respective Purchased Product she purchased.")). Gerber then asserts that because Gerber's labels

28

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

are, at least in Gerber's view, truthful overall, it is implausible that Bruton could have been misled by Gerber's nutrient content and sugar-related claims. *Id.* at 3-4.

The Court disagrees. The SAC alleges: (1) that Bruton read Gerber's allegedly unlawful label statements; (2) that Bruton reasonably relied on these statements in choosing to buy the Purchased Products; and (3) that Bruton suffered economic injury by paying more for the Purchased Products than she would have paid had the allegedly unlawful label statements not appeared on the products. SAC ¶¶ 17-18; 85-92. Further, the SAC explains why Gerber's label statements are allegedly unlawful and why the statements would be misleading to a reasonable consumer. *See, e.g., id.* ¶¶ 68, 75-76.[4] While Gerber disputes Bruton's allegations, essentially contending that no reasonable consumer would have been misled by Gerber's label statements given the overall context in which the statements appeared, *see* Mot. at 3-5, this is nothing more than a dispute of fact not appropriately resolved on a motion to dismiss. Accordingly, the Court DENIES Gerber's Motion to Dismiss the SAC on the ground that Bruton's standing allegations lack plausibility. *Accord* MTD Order at 26-27 (rejecting near-identical standing argument raised in Gerber's Motion to Dismiss the First Amended Complaint).[5]

---

[4] As the Court concluded in its previous MTD Order, the Court finds that Bruton's allegations that sound in fraud meet the pleading requirements of Federal Rule of Civil Procedure 9(b). MTD Order at 27, 39 n.26. The SAC identifies the allegedly unlawful and misleading statements, explains why the statements are allegedly unlawful and misleading, and identifies who made the statements and when the statements were made. This is sufficient for purposes of Rule 9(b), *accord Clancy v. The Bromley Tea Co.*, No. 12-3003, 2013 WL 4081632, at *10-11 (N.D. Cal. Aug. 9, 2013); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. 10-4387, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011), and the Court thus rejects Gerber's argument that the SAC should be dismissed because Bruton fails to explain why she believes that Gerber's label statements are misleading, *see* Mot. at 7-9.

The Court also rejects Gerber's argument that Bruton's claims under Section 1770(a)(5) and 1770(a)(7) of the CLRA fail because the SAC does not allege that Gerber made any "affirmative misrepresentation." Mot. at 8 n.4. The SAC alleges repeatedly that Gerber's "Excellent/Good Source," "Healthy," and "No Added Sugar" label statements are misrepresentations.

[5] Gerber also asserts that Bruton lacks standing because Bruton's allegations that she would not have purchased Gerber's products were it not for Gerber's allegedly unlawful and misleading label statements are implausible considering that Bruton's claims relate to baby food. Mot. at 15 n.7. As Gerber sees it, "Plaintiff could not simply forgo purchasing [Gerber] products, as she had no choice but to provide sustenance for her child." *Id.* Gerber further contends that the SAC fails to allege that Bruton could have purchased other, less expensive food products for her child. *Id.*

19

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**C.      Failure to State a Claim**

Gerber next moves to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Gerber makes a variety of arguments under this rubric, including: (1) Gerber's label statements would not deceive a reasonable consumer, Mot. at 9-10; (2) Gerber's "Healthy" claims are non-actionable "puffery," *id.* at 10-11; (3) Gerber's label statements comply with federal regulations, *id.* at 15-18; and (4) Bruton cannot bring a claim based on Gerber's alleged failure to disclose that its label statements were unlawful, *id.* at 11-12. The Court addresses each argument below.

**1.      Reasonable Consumer**

Gerber contends that Bruton fails to state a claim for violation of the UCL, FAL, or CLRA because "[a] reasonable consumer would not be deceived by the alleged representations for the same reasons that Plaintiff does not have standing." Mot. at 9; *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (acknowledging that UCL, FAL, and CLRA claims "are governed by the reasonable consumer test" (internal quotation marks omitted)). As already discussed in relation to Gerber's standing arguments, however, *see supra* Part III.B.2.d, the Court concludes that whether a reasonable consumer would or would not have been misled by Gerber's label statements is a question of fact not suitable for resolution on a motion to dismiss. *See, e.g.,* *See Williams*, 552 F.3d at 938-39 ("[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on" a motion to dismiss); *Khasin v. Hershey Co.*, No. 12-1862, 2012 WL 5471153, at *7 (N.D. Cal. Nov. 9, 2012) (rejecting a similar plausibility argument because "the issues Defendant raise[s] ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of

---

This argument fails on both counts. First, Gerber's latter contention is simply wrong. The SAC specifically alleges that "Plaintiff had cheaper alternatives available and paid an unwarranted premium for the Purchased Products." SAC ¶ 92. Second, Bruton's claim that she would have foregone purchasing Gerber products were it not for Gerber's label statements is not rendered implausible solely by the fact that baby food is at issue. No parent has to feed her child pre-packaged pureed vegetables, let alone fruit-flavored puffs, in order to ensure the child's survival, and even a parent that purchases baby food (rather than making her own) has multiple brands from which to choose.

20

United States District Court
For the Northern District of California

1    this Rule 12(b)(6) motion"); *see also* MTD Order at 27 (rejecting Gerber's argument that no

2    reasonable consumer would be misled by its label statements in prior MTD Order). Consequently,

3    the Court DENIES Gerber's Motion to Dismiss the SAC on this ground.

4              **2.       Non-actionable "Puffery"**

5              Gerber next contends that Bruton's claims based on Gerber's representations that its

6    products are "As Healthy As Fresh," "Support[] Healthy Growth & Development," and provide

7    "Nutrition for Healthy Growth & Natural Immune Support" fail because these statements are non-

8    actionable "puffery" upon which no reasonable consumer would rely. Mot. at 10. California

9    consumer protection law distinguishes between concrete statements about a product and

10   generalized boasts or statements of opinion, and only the former is actionable under the UCL, FAL,

11   and CLRA. *See, e.g.*, *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351,

12   1360-62 (2003). However, as discussed in the Court's prior MTD Order rejecting this same

13   "puffery" argument, the "Healthy" claims in this case are covered by federal and state regulations

14   that impose specific labeling requirements and which assume that consumers rely on health-related

15   claims on food products in making purchasing decisions. *See* MTD Order at 35-36. Accordingly,

16   the Court cannot conclude as a matter of law that no consumer would rely on Gerber's "Healthy"

17   label statements. Again, the issues of reliance and how Gerber's statements would be understood

18   by a reasonable consumer are questions of fact ill-suited for resolution on a motion to dismiss.

19   *Accord Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010) (whether

20   statements such as "wholesome" and "smart choices made easy" constituted puffery was not

21   amenable to resolution on a motion to dismiss). The Court therefore concludes that Bruton's

22   allegations based on the "Healthy" claims that appear on the Purchased Products are sufficiently

23   plausible to survive a motion to dismiss, DENIES Gerber's Motion to Dismiss the "Healthy"

24   claims on this ground.

25             **3.       Compliance With FDA Regulations**

26             Gerber argues that Bruton fails to state a claim based on Gerber's "Excellent/Good Source"

27   and "Healthy" statements, because both sets of statements comply with federal labeling

28
                                                    21

1   regulations. Mot. at 15-18.[6] The Court rejected this argument in its prior MTD Order, *see* MTD

2   Order at 32-36, and it finds the argument equally unpersuasive here. While Gerber proffers

3   readings of the regulations governing "Excellent/Good Source" and "Healthy" claims that would

4   render its label statements lawful, the SAC cites FDA warning letters (one of which was addressed

5   directly to Gerber) that offer a contrary reading of these same regulations that would render

6   Gerber's label statements *unlawful*. *See* SAC ¶¶ 44-45 (citing February 22, 2010 FDA Warning

7   Letter sent to Gerber and December 4, 2009 FDA Warning Letter sent to Nestlé U.S.A.). While

8   Gerber contests whether these warning letters are binding FDA authority and urges the Court to

9   reject the FDA's interpretations of the regulations as being "inconsistent with the regulation[s]"

10  themselves, Mot. at 16 n.8, Gerber does not identify any countervailing authority to support its own

11  interpretations of the regulations. Nor is Gerber's reading of the applicable FDA regulations so

12  plainly correct as to lead the Court to reject the FDA's interpretation as "plainly erroneous or

13  inconsistent with the regulation[s]." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414

14  (1945). All Gerber has established at this stage is that there is a dispute between the parties as to

15  how to read the FDA's regulations. Gerber falls well short of establishing that its interpretation of

16  the regulations is correct as a matter of law. Accordingly, the Court (once again) DENIES Gerber's

17  Motion to Dismiss Bruton's "Excellent/Good Source" and "Healthy" claims on the ground that

18  Gerber's label statements comply with federal and California law.[7]

19  _____

20  [6] Gerber does not raise this argument with respect to the sugar-related statements.
    [7] Gerber also contends that Bruton cannot state a claim based on Gerber's use of the "Nutri

21  Protect" logo—an icon that depicts a child's arms holding blocks with labels such as "A," "D,"
    "Iron," and "Zinc," *see, e.g.*, SAC Exs. F, H—because this icon does not amount to a nutrient

22  content claim under federal law. Mot. at 18. Gerber identifies no authority to support its argument
    that the Nutri Protect logo is not a nutrient content claim, and the Court concludes that Bruton's

23  allegation that the Nutri Protect logo *is* a nutrient content claim is not so implausible as to merit
    dismissal under Rule 12(b)(6). A nutrient content claim is any claim "made in the label or labeling

24  of the food which expressly or by implication . . . characterizes the level of any nutrient." 21
    U.S.C. § 343(r)(1)(A). The Nutri Protect logo, by highlighting certain nutrients, plausibly intends

25  to convey that those nutrients are present in the product in large enough amounts to merit a
    mention on the front of the package. Because the Court is not convinced that Bruton's allegation

26  that the Nutri Protect logo is a nutrient content claim is so implausible as to merit dismissal under
    Rule 12(b)(6), the Court rejects Gerber's argument that Bruton fails to state a claim based on the

27  logo.

28
                                              22

#### 4.      Failure to Disclose

Gerber also argues that Bruton fails to state a claim based on a theory that Gerber breached a duty to disclose that its products were misbranded under federal and California law. Mot. at 12; SAC ¶ 19 ("Defendant had a duty to disclose the illegality of its misbranded products . . . ."). The Court agrees. Bruton cites no federal (or state) authority for her contention that Gerber had a duty to disclose that its products made illegal claims. Bruton may not state a claim for a labeling violation, however, unless that claim is grounded in a specific, federal regulatory requirement, because any claim that attempts to impose a labeling requirement that differs from or adds to federal regulations is subject to express preemption. *See, e.g.*, *Gustavson*, 2013 WL 5201190 at *11 (quoting FDCA's express preemption provision, codified at 21 U.S.C. § 341-1(a)). In the absence of any federal regulatory authority that imposes upon Gerber a duty to disclose its own labeling misstatements, the Court concludes that Bruton is attempting to impose a labeling requirement that is not identical to federal requirements, which is expressly preempted, and thus that Bruton cannot state a claim based on Gerber's failure to disclose its alleged labeling violations. *See Brazil II*, 2013 WL 5312418, at *10 (dismissing similar failure-to-disclose claims on the ground that no federal law or regulation imposes a duty to disclose the fact of one's own labeling violations). Because Bruton's failure-to-disclose theory fails as a matter of law, the Court concludes that amendment would be futile, and thus DISMISSES these claims with prejudice.

#### D.      Failure to Plead Purchases with Particularity Under Rule 9(b)

Gerber contends that the SAC must be dismissed because Bruton does not plead when she purchased the Purchased Products with sufficient particularity for purposes of Federal Rule of Civil Procedure 9(b). Mot. at 18-19. The Court disagrees. The SAC alleges that Bruton bought the Purchased Products throughout the class period, which runs from May 11, 2008 to the present. SAC ¶¶ 1, 82. As this Court and numerous other courts in this district have concluded in other food misbranding cases, the SAC's allegations are sufficient to place Gerber on notice as to the time period in which Bruton's allegations arise. *See, e.g.*, *Werdebaugh*, 2013 WL 5487236 at *14; *Clancy*, 2013 WL 4081632, at *10; *Astiana v. Ben & Jerry's*, 2011 WL 2111796 at *6. Although

23

**United States District Court**
For the Northern District of California

1   Gerber argues that the instant case is distinguishable because Gerber's product labels have

2   purportedly changed during the class period, *see* Mot. at 19, the Court has already concluded that

3   whether and when Gerber's product labels changed during the class period is a factual issue not

4   appropriately resolved at this stage of the litigation. *See supra* Part III.A.[8] Accordingly, the Court

5   DENIES Gerber's Motion to Dismiss the SAC due to Bruton's failure to plead her purchases with

6   particularity under Rule 9(b).

7          **E.    Nationwide Class Allegations**

8          Gerber finally argues that Bruton's nationwide class claims should be dismissed, because

9   Bruton "cannot sue under California's consumer protection statutes on behalf of out-of-state

10   putative class members, who made out-of-state purchases of products made by an out-of-state

11   company." Mot. at 24. The Court concludes, however, that dismissing Bruton's nationwide class

12   claims at this stage would be premature. Although Gerber may ultimately prove correct in its

13   argument that California law cannot be applied to out-of-state purchases made by out-of-state

14   consumers, whether or not this is so depends, in substantial part, on a case-specific choice-of-law

15   analysis that the parties and the Court have yet to undertake. *See Mazza v. Am. Honda Motor Co.*,

16   666 F.3d 581, 589-94 (9th Cir. 2012) (whether out-of-state class members must pursue claims

17   under their own states' consumer protection statutes instead of California's consumer protection

18   statutes depends on a multi-stage choice-of-law analysis specific to the "facts and circumstances"

19   of the particular case); *see also Werdebaugh*, 2013 WL 5487236 at *16 (declining to strike

20   nationwide class allegations at the pleading stage in light of parties' failure to conduct choice-of-

21   law analysis); *Brazil II*, 2013 WL 5312418 at *11 (same).[9] Because the Court finds that it cannot

22   _____

23   [8] This point distinguishes this case from *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889 (N. D. Cal. 2012). In *Jones*, the court found that the plaintiffs failed to adequately plead when they

24   purchased one of the defendant's products, because the product's label had changed during the time period covered by the complaint and because the plaintiffs did not specify whether they

25   purchased the product before or after the label change. *Id.* at 902-03. In that case, however, the plaintiffs themselves admitted that the product's label had changed in the complaint itself. *Id.* Here,

26   the SAC does not allege that any labeling changes occurred, and the Court has concluded that Gerber's efforts to show otherwise inject factual disputes into this case that are not appropriately

27   resolved at the pleadings stage. *See supra* Part III.A.

28   [9] This approach accords with that of numerous other courts within the Ninth Circuit, which have

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

United States District Court
For the Northern District of California

1    resolve Gerber's choice-of-law challenge at this stage in the litigation, Gerber's Motion to Dismiss

2    on this ground is DENIED.

3    **IV.      CONCLUSION**

4           For the foregoing reasons, the Court rules as follows:

5           1.   Gerber's Request for Judicial Notice is DENIED;

6           2.   Gerber's Motion to Dismiss Bruton's claims related to the Substantially Similar

7                Products for lack of standing is GRANTED with prejudice in part and DENIED in part;

8           3.   Gerber's Motion to Dismiss Bruton's claims related to website statements she did not

9                view for lack of standing is GRANTED with prejudice;

10          4.   Gerber's Motion to Dismiss Bruton's claims for lack of standing because Bruton's

11               allegations of reliance are implausible is DENIED;

12          5.   Gerber's Motion to Dismiss Bruton's claims on the ground that no reasonable consumer

13               would be misled by Gerber's label statements is DENIED;

14          6.   Gerber's Motion to Dismiss Bruton's claims related to Gerber's "Healthy" label

15               statements on the ground that these statements constitute non-actionable "puffery" is

16               DENIED;

17          7.   Gerber's Motion to Dismiss Bruton's "Excellent/Good Source" and "Healthy" claims

18               on the ground that these label statements comply with FDA regulations is DENIED;

19          8.   Gerber's Motion to Dismiss Bruton's claims that Gerber failed to disclose that its label

20               statements were illegal is GRANTED with prejudice;

---

declined to conduct the choice-of-law analysis at the pleadings stage. *See, e.g.*, *Clancy*, 2013 WL 4081632 at *7 ("Such a detailed choice-of-law analysis is not appropriate at [the motion for judgment on the pleadings] stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery."); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) ("At [the motion to dismiss] stage of the instant litigation, a detailed choice-of-law analysis would be inappropriate. Since the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs' claims." (citation omitted)).

25

9. Gerber's Motion to Dismiss Bruton's claims on the ground that the SAC fails to plead Bruton's purchases with particularity under Federal Rule of Civil Procedure 9(b) is DENIED; and

10. Gerber's Motion to Dismiss Bruton's nationwide class allegations is DENIED.

**IT IS SO ORDERED.**

Dated: January 15, 2014

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No.: 12-CV-02412-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT