UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATALIA BRUTON, individually and on behalf of all others similarly situated,<br><br>           Plaintiff.<br><br>     v.<br><br>GERBER PRODUCTS COMPANY,<br><br>           Defendant. | Case No.: 12-CV-02412-LHK<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION |

Plaintiff Natalia Bruton ("Bruton" or "Plaintiff") brings this putative class action against Gerber Products Company ("Gerber" or "Defendant"), alleging that Defendant's product labeling is unlawful, deceptive, and misbranded in violation of federal and California law. Plaintiff moves to certify a class of California consumers who purchased Gerber products from May 11, 2008 to the date of notice to the class. ("Mot.") ECF No. 82 at i. Defendant opposes the Motion, ("Opp'n") ECF No. 88, and Plaintiff replies, ("Reply") ECF No. 110. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing scheduled for June 26, 2014. ECF No. 114. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby DENIES Plaintiff's Motion for Class Certification.[1]

---

[1] Also before the Court are Gerber's Motions to Exclude the Expert Testimony of Dr. Oral Capps, F. Edward Scarbrough, and Dr. Julie Caswell, *see* ECF Nos. 94, 95, 96, and Gerber's Motion for

1
Case No.: 12-CV-02412-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## I. BACKGROUND

### A. Factual Background

Gerber claims to be "the world's most trusted name in baby food" and reportedly controls between 70 and 80 percent of the baby food market in the United States. Second Am. Compl. ("SAC") ECF No. 62 ¶ 27. Gerber packages and sells retail food products specifically intended for infants and children under two years of age. *Id.* ¶ 28. Gerber organizes its products by "stages," including: "Birth+," "Supported Sitter," "Sitter," "Crawler," and "Toddler." *See* The Gerber Nutrition Journey, GERBER.COM, https://www.gerber.com/our-story/the-gerber-nutrition-journey (last visited June 20, 2014).[2]

Bruton is a California resident who purchased various Gerber food products intended for children under the age of two over the past four years. SAC ¶¶ 20, 82. Specifically, Bruton purchased the following products ("Purchased Products"): (1) Gerber Nature Select 2nd Foods Fruit—Banana Plum Grape; (2) Gerber Nature Select 2nd Foods Fruit—Apples and Cherries; (3) Gerber Nature Select 2nd Foods Vegetables—Carrots; (4) Gerber Nature Select 2nd Foods Spoonable Smoothies—Mango; (5) Gerber Nature Select 2nd Foods Vegetables—Sweet Potatoes & Corn; (6) Gerber Organic SmartNourish 2nd Foods—Banana Raspberry Oatmeal; (7) Gerber Organic SmartNourish 2nd Foods—Butternut Squash & Harvest Apple with Mixed Grains; and (8) Gerber Organic SmartNourish 2nd Foods—Farmer's Market Vegetable Blend with Mixed Grains. *See* Stipulated Chart of Products at Issue in this Case ("Chart") ECF No. 117. In addition to bringing claims regarding the Purchased Products, Bruton also asserts claims related to dozens of additional products that Bruton alleges are substantially similar to the Purchased Products, in that they are similar products that make similar label misrepresentations and violate the same federal

---

Leave to File Evidentiary Objections to the Reply Declaration of Dr. Oral Capps, *see* ECF No. 125. The Court does not rely on the testimony of any of these witnesses in this Order. Accordingly, the Court DENIES as moot Gerber's Motions to Exclude these witnesses' testimony and Gerber's Motion for Leave to File Evidentiary Objections.

[2] Each of Gerber's baby food product lines is assigned to a stage, with "1st Foods" being designated for children in the "Supported Sitter" stage, "2nd Foods" for children in the "Sitter" stage, "3rd Foods" for children in the "Crawler" stage, etc. *See* Baby Food, GERBER.COM, https://www.gerber.com/products/baby-food (last visited June 20, 2014).

and California labeling laws. SAC ¶ 3. Bruton refers to these additional products as the "Substantially Similar Products." *Id.*; *see also* Chart at 1-4.

Bruton alleges that Gerber's food products are "misbranded" in violation of federal and California labeling laws because Gerber makes two types of unlawful and deceptive claims on its product labels. First, Bruton challenges Gerber's use of "nutrient content claims," which are claims about specific nutrients contained in a product that, pursuant to Section 403 of the Food, Drug, and Cosmetic Act ("FDCA"), must be made in accordance with federal regulations. *Id.* ¶¶ 51-53; *see* 21U.S.C. § 343(r)(1)(A). Bruton alleges that Gerber makes nutrient content claims on virtually all Gerber food products, despite the fact that the Food and Drug Administration ("FDA") does not authorize nutrient content claims on foods intended for children under age two. SAC ¶ 60; 21 C.F.R. § 101.13(b)(3). Bruton specifically asserts that Defendant makes the following unlawful nutrient content claims: (1) claims that a product is an "Excellent Source" or a "Good Source" of various vitamins and minerals, ("Excellent/Good Source Statements") SAC ¶ 59(a); (2) claims that a product is "As Healthy As Fresh," provides "Nutrition for Healthy Growth & Natural Immune Support," or "Supports Healthy Growth & Development," ("Healthy Statements") *id.* ¶ 59(b); and (3) claims that a product contains "No Added Sugar" or "No Added Refined Sugar," ("No Sugar Added Sugar Statements") *id.* ¶ 59(c).

Bruton additionally alleges that many of Gerber's products that are labeled with a "No Added Sugar" or "No Added Refined Sugar" nutrient content claim contain sufficiently high levels of calories that federal law requires that the claims be accompanied by a disclosure statement warning of the high caloric value of the products. *Id.* ¶ 69 (citing 21 C.F.R. § 101.60(c)(2)). Because Gerber does not place a disclosure statement on these food products, Bruton asserts that Gerber's product labels violate federal and California law. *Id.* ¶¶ 69-74.

Bruton contends that, by manufacturing, advertising, distributing and selling misbranded food products, Gerber has violated California Health and Safety Code Sections 109885, 110390, 110395, 110398, 110400, 110660, 110665, 110670, 110705, 110760, 110765, and 110770. *Id.* ¶¶ 94-100. In addition, Bruton asserts that Gerber has violated the standards set by 21 C.F.R. §§ 101.13, 101.54, 101.60, and 101.65. *Id.* ¶ 101. Consequently, the SAC alleges the following

3

causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, for unlawful, unfair, and fraudulent business acts and practices, SAC ¶¶ 114-140; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, for misleading, deceptive, and untrue advertising , SAC ¶¶ 141-156; and (3) violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, SAC ¶¶ 157-173.

Bruton now seeks to certify the following class pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3):

> All persons in the state of California who, from May 11, 2008, until the date of notice, purchased [Gerber baby food products identified in the Chart] which were labeled with one or more of the following claims: "Excellent Source of," "Good Source of," "Healthy," "No Added Sugar" and/or "No Added Refined Sugar."

Mot. at i.[3]

### B. Procedural History

Bruton filed her Original Complaint on May 11, 2012, ECF No. 1, and a First Amended Complaint on September 21, 2012, ECF No. 26. On September 6, 2013, the Court granted in part and denied in part Defendant's Motion to Dismiss. ("First MTD Order") ECF No. 57. Bruton filed the SAC on October 7, 2013. ECF No. 62. Gerber filed a Motion to Dismiss the SAC on October 31, 2013, ECF No. 65, which the Court granted in part and denied in part on January 15, 2014, ECF No. 83.

On January 10, 2014, Bruton moved for class certification. ECF No. 82. Defendant filed an opposition on March 11, 2014, ECF No. 88, and Plaintiff replied on April 3, 2014, ECF No. 110.

---

[3] Plaintiff filed her Motion for Class Certification on January 10, 2014, ECF No. 82, several days before this Court issued its Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, ("Second MTD Order") ECF No. 83. Because the Second MTD Order dismissed certain products from the case, Plaintiff's original proposed class definition referred to an overbroad set of products. *See* Mot. at i. Accordingly, the Court directed the parties to file an updated list of the products still at issue. ECF No. 116. In response, the parties filed the Chart, ECF No. 117, upon which the Court now relies as the determinative list of the products at issue in this case.

4

Case No.: 12-CV-02412-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23, which governs class certification, has two sets of distinct requirements that Plaintiffs must meet before the Court may certify a class. Plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b).

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed .R. Civ. P. 23(a). Courts refer to these four requirements, which must be satisfied to maintain a class action, as "numerosity, commonality, typicality and adequacy of representation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). Further, courts have implied an additional requirement under Rule 23(a): that the class to be certified be ascertainable. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012); *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 671-72 (N.D. Cal. 2011).

In addition to meeting the requirements of Rule 23(a), the Court must also find that Plaintiffs have satisfied "through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). The Court can certify a Rule 23(b)(1) class when Plaintiffs make a showing that there would be a risk of substantial prejudice or inconsistent adjudications if there were separate adjudications. Fed. R. Civ. P. 23(b)(1). The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, the Court can certify a Rule 23(b)(3) class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Trust*

1  *Funds*, 133 S. Ct. 1184, 1194 (2013) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541,

2  2551 (2011)); *see also Mazza*, 666 F.3d at 588 ("'Before certifying a class, the trial court must

3  conduct a 'rigorous analysis' to determine whether the party seeking certification has met the

4  prerequisites of Rule 23.'" (quoting *Zinser v. Accufix Research Inst., Inc*., 253 F.3d 1180, 1186

5  (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir. 2001))). Nevertheless, "Rule 23 grants courts no

6  license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 133 S. Ct. at

7  1194-95. "Merits questions may be considered to the extent—but only to the extent—that they are

8  relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. at

9  1195. Within the framework of Rule 23, the Court ultimately has broad discretion over whether to

10  certify a class. *See Zinser*, 253 F.3d at 1186.

**III.   DISCUSSION**

Bruton seeks to certify a national class of consumers who purchased Gerber products during the class period under both Rule 23(b)(2) and Rule 23(b)(3). Mot. at i, 14-15. Plaintiff requests certification of a Class seeking restitution and damages under Rule 23(b)(3) and certification of an injunctive relief class under Rule 23(b)(2). *Id.* at 14-15.

In response, Defendant contends that the standards for class certification have not been met because, among other things, Bruton has failed to define an ascertainable class. *See* Opp'n at iv, 13-16. For the reasons that follow, the Court agrees. As Bruton's failure to define an ascertainable class precludes class certification, the Court need not address Defendant's additional objections to class certification.

**A.    Ascertainability**

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Sethavanish v. ZonePerfect Nutrition Co*., No. 12-2907, 2014 WL 580696, at *4 (N.D. Cal. Feb. 13, 2014) (internal quotation marks omitted). A class is ascertainable if it is defined by "objective criteria" and if it is "administratively feasible" to determine whether a particular individual is a member of the class. *Compare Wolph v. Acer Am. Corp*., No. 09-1314, 2012 WL 993531, at *1-2 (N.D. Cal. Mar. 23, 2012) (certifying a class where "the identity and contact information for a

6
Case No.: 12-CV-02412-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    significant portion of [class members] can be obtained from the warranty registration information
2    and through Acer's customer service databases"), *and Hofstetter v. Chase Home Fin., LLC*, No. 10-
3    1313, 2011 WL 1225900, at *14 (N.D. Cal. Mar. 31, 2011) (certifying class where "defendants'
4    business records should be sufficient to determine the class membership status of any given
5    individual"), *with Tietsworth v. Sears, Roebuck & Co.*, No. 09-288, 2013 WL 1303100, at *3-4
6    (N.D. Cal. Mar. 28, 2013) (denying certification where "ascertaining class membership would
7    require unmanageable individualized inquiry" (internal quotation marks omitted)), *and Xavier v.
8    Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (denying class certification
9    on ascertainability grounds when proposed class consisted of individuals who smoked a minimum
10   number of cigarettes over "at least twenty pack-years").

11   Plaintiff proposes to certify a class of individuals who purchased 69 different types of
12   Gerber baby food products between May 11, 2008 and the present. Mot. at i; Chart at 1-4. Each of
13   the proposed products fall within Gerber's "2nd Foods" product scheme, which Gerber markets for
14   children in the "Sitter" stage of development. Chart at 1-4; SAC ¶ 28. Under the 2nd Foods product
15   scheme and included in the class definition are seven product sub-categories and multiple flavors
16   within each sub-category, so that of the 93 varieties of baby food available in the 2nd Foods
17   product category, 69 products are part of the proposed class.[4] *See* Chart at 1-4; *2nd Foods®*,
18   GERBER.COM, https://www.gerber.com/product-category-landing/product-subcategory/Index/21
19   (last visited June 20, 2014) (showing all 2nd Foods products); *see also* Reply at 4 (acknowledging
20   that proposed class definition does not include all 2nd Foods products).

21   Gerber argues that this proposed class is not ascertainable for two reasons. First, Gerber
22   maintains that there is no feasible way to identify the class members because Gerber does not sell

---

[4] Included in the Gerber 2nd Foods product category are multiple sub-categories, which include "2nd Foods," "NatureSelect 2nd Foods," "Organic 2nd Foods," "Organic SmartNourish 2nd Foods," "SmartNourish 2nd Foods," and "DHA 2nd Foods." Each of these sub-categories includes different flavors. Chart at 1-4. Gerber's 2nd Foods products also come in three different packages: "Pouches," "Puree Jars," and "Aseptic 2-Packs." Declaration of Kelly Greenberg ("Greenberg Decl.") ECF No. 87-3 ¶ 3. Bruton's proposed class definition excludes all products sold in "Pouches," as well as certain flavors sold in "Puree Jars" and "Aseptic 2-Packs." *See* Chart at 1-4; *see also* Reply at 4 (acknowledging that some 2nd Foods products never bore any challenged label claims during the class period and noting that those 2nd Foods products are not included within the class definition).

7
Case No.: 12-CV-02412-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   its food products directly to consumers and does not maintain data identifying who purchases its

2   products. Opp'n at 14. Second, Gerber contends that changes in product labeling during the class

3   period would render any effort to identify class members through self-reporting and affidavits

4   administratively infeasible. *Id.* at 14-15. The court addresses each contention in turn.

### 1. Record Keeping

First, Gerber contends that ascertaining the Class in this case is not administratively feasible because Gerber does not keep track of who purchases its products. *Id*. at 14. Gerber notes that even third party retailers who sell Gerber's products do not maintain records of who purchases Gerber 2nd Foods. *Id*.

Defendant's concerns on this point draw largely from the reasoning of *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013). In that case, the Third Circuit held that a putative class of purchasers of defendant Bayer's diet supplement was not ascertainable because the company kept no records that could be used to identify class members. *Id*. at 308-309. The Third Circuit refused to allow putative class members to submit affidavits in order to join the class, because this method did not allow the defendant to challenge class membership. *Id*. at 309.

"While [*Carerra*] may now be the law in the Third Circuit, it is not currently the law in the Ninth Circuit." *McCrary v. Elations Co.*, No. 13-242, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014). "In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *Id*. (internal quotation marks omitted). This court has recently certified several classes where a defendant sold its products through third party retailers and had no way of determining the names of individuals who purchased its product. *See Werdebaugh v. Blue Diamond Growers*, No. 12-2724, 2014 WL 2191901, at *9-11 (N.D. Cal. May 23, 2014) (finding a class of consumers who purchased Blue Diamond products labeled "All Natural" during the class period to be ascertainable and rejecting the argument that "the proposed class is not ascertainable because no company records exist to identify purchasers or which products they bought"); *Brazil v. Dole Packaged Foods, LLC*, No. 12-1831, 2014 WL 2466559, at *4-6 (N.D. Cal. May 30, 2014) (finding a class of consumers who purchased Dole products labeled

8

Case No.: 12-CV-02412-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1  "All Natural Fruit" during the class period to be ascertainable and rejecting the argument that "the
2  proposed class is not ascertainable because no company records exist to identify purchasers or
3  which products they bought").

4  As such, Defendant's argument that class certification should be denied based on
5  Defendant's failure to keep records of which consumers purchased its products is unpersuasive.
6  Like other cases previously certified, if Plaintiff can prove an administratively feasible method of
7  proving which members are part of the putative class, this Court will not deny certification based
8  solely on Defendant's own lack of consumer data.

### 2. Labeling Variation

Gerber next contends that ascertaining the class in this case is not administratively feasible because consumers will not be able to reliably determine whether or not they are eligible to join the class. Opp'n at 14-16. The parties agree that Gerber sold multiple versions of the same products during the class period. *See id*. at 14; Reply at 4; Chart at 1-4. Gerber further points out that most, if not all, consumers likely discarded the product packaging in this case, which would force consumers to rely on memory alone in determining whether or not they are eligible to join Plaintiff's proposed class. Opp'n at 15. In Gerber's view, it asks too much of consumers' memories to expect consumers to remember not only whether they purchased certain types and flavors of Gerber 2nd Foods, but also whether the products bore the challenged label statements. *See id.* at 15-16.

Of the 69 products at issue in this case, the parties agree that 66 were labeled both with and without challenged labels during the class period. Chart at 1-4.[5] Gerber reports (without contradiction from Bruton) that based on differences in printing times, shipping times, and inventory needs at retail stores, a new label produced by Gerber may appear for sale on a store shelf anywhere between three and thirteen months after the new label is approved.[6] Levitan Decl.

---

[5] The remaining three products are: (1) Gerber Organic SmartNourish 2nd Foods—Apples & Summer Peaches; (2) Gerber Organic SmartNourish 2nd Foods—Banana Mango; and (3) Gerber SmartNourish 2nd Foods—Banana Pineapple Orange Medley. Chart at 3. These three products were apparently discontinued at some point during the class period. *See id.*

[6] Gerber states that its marketing department approves and releases new labels for its products on an ad-hoc basis, and those labels take up to six weeks to print after release. Greenberg Decl. ¶ 5; Declaration of Russ Levitan ("Levitan Decl.") ECF No. 90 ¶ 14. Gerber reports that it generally

9
Case No.: 12-CV-02412-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

¶¶ 14-15. Based on this time gap, Gerber contends it will not be able to identify what label was on a consumer's product even if the consumer remembers the exact date on which she purchased the product. Opp'n at 6-7. Gerber also submitted evidence (which Bruton does not contest) demonstrating that at certain times during the class period, there were two different labels for sale in one store—such that on a given day one consumer may have purchased a product with a challenged label statement while another purchaser of the same product did not. *Id.* at 14. Specifically, Gerber submitted the Declaration of Dr. Carol A. Scott, a marketing analyst, who reported visiting the San Mateo location of Mollie Stone's in February 2014. ("Scott Decl.") ECF No. 87-6 ¶ 35. At that time, Dr. Scott observed five different versions of Gerber 2nd Foods for sale with two different labels, one with challenged label statements and one without. *Id.* ¶ 38, Ex. 9. Dr. Scott submitted photos showing Gerber 2nd Foods Peaches, Apple Strawberry Banana, Sweet Potatoes, and Green Beans for sale with multiple labels. Scott Decl. Ex. 9. One version of each label contains the statement "Supports Healthy Growth and Development," while the other version contains no challenged statements. *Id.*

While courts in this district have previously found proposed classes ascertainable even when the only way to determine class membership is with self-identification through affidavits, *see, e.g.*, *Ries v. AriZona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012), courts in this district have also declined to certify classes when self-identification would be unreliable or administratively infeasible. In *Xavier*, for instance, the plaintiff sought to certify a class of consumers who had smoked twenty "Pack-Years," or at least 146,000, Marlboro cigarettes over the class period, which spanned several decades. 787 F. Supp. 2d at 1078, 1088-89. Plaintiff Xavier sought relief from defendant Philip Morris in the form of medical monitoring of class members' health, but did not seek monetary damages. *Id.* at 1078. Because Philip Morris had no record of who had purchased its product, Xavier suggested that prospective class members could identify themselves by submitting affidavits swearing that they had smoked at least 146,000 Marlboro

---

sends its newly labeled products to 3rd party retailers about two months after printing. Levitan Decl. ¶ 15. Once Gerber sends the products out, retailers stock the new products based on their current inventory levels, so that a given product may not go on display in the retail store until many months after Gerber's initial shipment. *Id.* ¶¶ 14-17.

10

Case No.: 12-CV-02412-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

cigarettes over their lifetimes. *Id*. at 1090. Judge Alsup denied class certification, finding that the plaintiff's proposed class was not ascertainable. *Id*. In reaching this conclusion, Judge Alsup noted that although whether or not an individual had smoked a sufficient number of cigarettes to qualify as a class member was, on some level, an "objective" question, there was nevertheless no way to *answer* this question using objective, reliable evidence. *Id.* at 1089 ("[W]hile the arithmetic total of an individual's Marlboro-smoking history is an 'objective' question, it remains a *question*, and its answer depends on each individual's *subjective estimate* of his or her long-term smoking habit."). Judge Alsup reasoned that asking individual class members to recall whether they had smoked 146,000 cigarettes asked too much of class members' prospective members' memories, noting that "[s]wearing 'I smoked 146,000 Marlboro cigarettes' is categorically different from swearing 'I have been to Paris, France,' or 'I am Jewish,' or even 'I was within ten miles of the toxic explosion on the day it happened.'" *Id*. at 1090. Judge Alsup further reasoned that although the plaintiff did not seek monetary damages, individuals might still have an incentive to lie about their smoking history in order to join the class and receive the benefit of medical monitoring. *Id*. ("[L]ong-term smokers of other cigarette brands and long-term smokers who have smoked fewer than 146,000 cigarettes may desire medical monitoring and be tempted to free-ride on relief granted in this action.").

Similarly, in *Jones v. Con Agra Foods, Inc*., plaintiff Jones sought certification of three different classes of consumers against defendant Con Agra: (1) purchasers of qualifying Hunt's tomato products during the class period labeled "100% Natural" or "Free of artificial ingredients & preservatives," (2) purchasers of qualifying PAM cooking spray products during the class period labeled "100% Natural," and (3) purchasers of qualifying Swiss Miss hot cocoa products labeled "Natural Source of Antioxidants" or "Natural Antioxidants are Found in Cocoa." No. 12-1633, 2014 WL 2702726, at *1-3 (N.D. Cal. June 13, 2014). As in this case, the proposed class definition included only purchasers of products bearing the challenged label statements, because Con Agra had produced and sold multiple versions of each of the contested product labels during the class period, some bearing the allegedly misleading statements and others not. *Id*.

1   Judge Breyer denied class certification for all three classes, finding, among other things,

2  that each class was not ascertainable.[7] *Id*. at 11. For each of the proposed classes, Judge Breyer

3  noted the difficulty associated with asking consumers to remember whether or not they purchased a

4  product containing an allegedly misleading label statement. *See, e.g.*, *id*. ("Moreover, that there are

5  seven varieties of PAM, some of which bore the '100% Natural' label and some of which did not,

6  and that two of the products bearing the '100% Natural' label stopped bearing that label in 2010,

7  makes it all the less likely that a consumer would accurately remember whether he had been

8  exposed to the label." (Citations omitted)). Judge Breyer reasoned that "[t]he variety of products

9  and of labels, combined with the lack of receipts and the low cost of the purchases, means that

10  consumers are unlikely to accurately self-identify." *Id*. Finding that the plaintiffs had not proposed

11  a reliable means of identifying class members, Judge Breyer found the proposed classes were not

12  ascertainable. *Id*. at *11-12.

13   This Court finds that the proposed class in this case suffers from the same sorts of defects

14  that precluded a finding of ascertainability in both *Xavier* and *Jones*.[8] Plaintiff in this case

15  acknowledges the likelihood that most class members will have long ago discarded the packaging

16  from their purchases, and proposes that putative class members submit affidavits testifying that

17  they made qualifying Gerber 2nd Foods purchases. *See* Reply at 7. This proposed method of class

18  identification is unsatisfactory.

---

[7] Judge Breyer went on to analyze the remaining Rule 23 requirements, finding that the proposed classes also failed to satisfy the predominance and superiority requirements and that plaintiff failed to present an adequate damages model. *See Jones*, 2014 WL 2702726 at *3-5, 14-16, 20-22, 23-24.

[8] Other recent cases from this district have also denied class certification in the absence of a reliable method to identify class membership. *See, e.g.*, *In re Hulu Privacy Litig.*, No. 11-3764, 2014 WL 2758598, at *13-16 (N.D. Cal. June 16, 2014) (denying class certification on ascertainability grounds when class membership would hinge on whether individuals watched Hulu while using Facebook's "stay logged in" function, whether they cleared browser cookies, and whether they used ad-blocking software); *Astiana v. Ben & Jerry's Homemade, Inc*., No. 10-4387, 2014 WL 60097, at *3 (N.D. Cal. Jan. 7, 2014) (finding proposed class unascertainable where class definition included persons who had purchased Ben & Jerry's ice cream that contained alkalized cocoa processed with a synthetic ingredient; only one of Ben & Jerry's fifteen suppliers of alkalized cocoa used the ingredient, and the plaintiff could provide no method for determining which consumers actually purchased ice cream containing the synthetic ingredient); *Tietsworth*, 2013 WL 1303100 at *3-4 (finding proposed class unascertainable where class definition included purchasers of washing machines manufactured with a defective electronic control board because there was no reliable way to determine whether purchasers whose washing machines produced an error message actually had defective machines).

12
Case No.: 12-CV-02412-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1    Plaintiff's proposed method for identifying class membership requires consumers to recall

2 much more than whether or not they purchased a Gerber 2nd Foods product. Consumers in this

3 case are asked to recall: (1) whether they purchased a Gerber 2nd Foods product; (2) whether they

4 purchased a 2nd Foods product in a qualifying flavor; (3) whether the product was in the

5 appropriate packaging; and (4) whether the product was labeled with a challenged label statement.

6    Because Defendant sells more flavors of Gerber 2nd Foods than Plaintiff includes in the

7 class definition, the likelihood that a consumer purchased a Gerber 2nd Foods product is greater

8 than the likelihood that he or she purchased a qualifying flavor. In addition, Gerber's flavors are

9 similar in name, with the result that one product may be included in the class definition while a

10 very similar sounding product is not.[9] The similarity between flavors included and not included in

11 the class definition increases the likelihood that consumers will have difficulty remembering

12 whether or not they purchased a qualifying product.

13    Further complicating the issue, like the defendant in *Jones*, Gerber produced and sold

14 products with multiple different labels throughout the class period. Opp'n at 4-5. Nearly all of the

15 Gerber 2nd Foods products included in the class definition did not contain any challenged label

16 statements during a portion of the class period. *Id.* at 5; Chart at 1-4. Not only were some labels

17 changed so that they no longer included challenged statements, but some statements printed on the

18 labels were moved from the front of the package to less prominent places on the product.[10] These

19 label changes make it even less likely that consumers will accurately recall whether or not they

---

[9] For example, purchasers of a Puree Aseptic 2-Pack in the Apples and Bananas with Mixed Cereal or Apples and Cherries flavors are included in the class definition, while purchasers of the Apple Peach Squash, Apple Berry with Mixed Cereal, and Apples and Chicken flavors are not. *See* Chart at 1-4; *2nd Foods*®, GERBER.COM, https://www.gerber.com/product-category-landing/ product-subcategory/Index/21 (last visited June 20, 2014).

[10] For example, for Gerber 2nd Foods Puree Aseptic 2-Pack Apples and Cherries flavor, Gerber produced and sold versions with six different labels during the class period. Opp'n Ex. A.11, ECF No. 97-11. The first version contained no challenged statements on the face of the package, but contained an Excellent Source Statement on the top. *Id*. Versions two through five had Healthy Statements on the front of the package and Excellent Source and No Sugar Added Statements on the top of the package, while the most recent version contained no challenged statements anywhere on the packaging. *Id*. Other products that originally bore challenged statements on the face of the packaging were changed so that challenged statements appeared only on the top or back of the package, and were then changed again so that no challenged statements appeared anywhere on the package. *See, e.g.*, Opp'n Ex. A.44, ECF No. 99-4; Ex. A.45, ECF No. 99-5; Ex. A.47, ECF No. 99-7.

13
Case No.: 12-CV-02412-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

purchased a Gerber 2nd Foods product with the challenged label statements. *See Jones*, 2014 WL 2702726 at *10 ("Even assuming that all proposed class members would be honest, it is hard to imagine that they would be able to remember which particular Hunt's products they purchased from 2008 to the present, and whether those products bore the challenged label statements.").

The number of products at issue in this case, the varieties included and not included in the class definition, the changes in product labeling throughout the class period, the varied and uncertain length of time it takes for products with new labels to appear on store shelves, and the fact that the same products were sold with and without the challenged label statements simultaneously make Plaintiff's proposed class identification method administratively unfeasible. *See Xavier*, 787 F. Supp. 2d at 1090. While it may be reasonable to ask consumers to submit affidavits testifying that they purchased a Gerber 2nd Foods product during the class period, asking consumers to remember whether or not they purchased a qualifying flavor in a package that bore a challenged statement is unlikely to produce reliable results.[11] *See Jones*, 2014 WL 2702726 at *10 ("Although this Court might be persuaded that a class of 'all people who bought Twinkies,' for example, during a certain period, could be ascertained—one would at least have more confidence in class members' ability to accurately self-identify—the variation in the Hunt's products and labels makes self-identification here unfeasible.").

Moreover, this case is distinct from other classes recently certified by this Court. In certifying classes where plaintiffs have proposed member identification by submission of affidavits, this Court has placed significant weight on the fact that all products in the class definition contained the allegedly problematic statements throughout the class period. *See Brazil*, 2014 2466559 at *6; *Werdebaugh*, 2014 WL 2191901 at *11.

In *Werdebaugh*, the plaintiff proposed certification of a class of consumers who had purchased a Blue Diamond almond milk product during the class period. 2014 WL 2191901 at *10. Significantly, Blue Diamond had labeled all of its almond milk products during the class period

---

[11] The fact that Plaintiff seeks monetary damages in this action only aggravates these issues, as it may encourage consumers to submit affidavits even though they cannot remember which products they purchased. *See Xavier*, 787 F. Supp. 2d at 1090 (holding potential class members might be incentivized to lie in affidavits in order to gain the benefit of the medical monitoring relief sought by plaintiff).

14
Case No.: 12-CV-02412-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1  with the allegedly misleading "All Natural" statement. *Id.* at *11. As such, plaintiff's class

2  definition included any consumer who had purchased any Blue Diamond almond milk product

3  during the class period. *Id*. Because Blue Diamond kept no record of purchasers, Werdebaugh

4  proposed class identification by consumer affidavit. *Id*. In certifying the class, the Court

5  specifically noted that "here all purchasers of Blue Diamond's almond milk products are included

6  in the class definition, and all cartons of the challenged almond milk products bore the alleged

7  mislabeling." *Id*. The Court contrasted the simplicity of the proposed class definition with other

8  unascertainable classes, noting that "[w]here courts have denied class certification because the

9  proposed class was not ascertainable, identification of class members posed far greater difficulties

10 than it is likely to pose in this case." *Id*. at *11 (citing *Xavier*, 787 F. Supp. 2d at 1090).

11       Similarly, in *Brazil* this Court certified a class of consumers who purchased Dole fruit

12 products allegedly mislabeled "All Natural" during the class period. 2014 WL 2466559 at *4-6. As

13 in *Werdebaugh*, the label statements made on the products included in the class definition were

14 consistent throughout the class period, and all of the products included in the class definition bore

15 the allegedly misleading statement. *Id*. at *6. Again, because Dole did not keep records of who

16 purchased its products, Brazil proposed identifying class members through submission of

17 affidavits. *Id*. In certifying the class, the Court found that determining class membership through

18 sworn statements was likely to produce reliable affidavits, noting that "'[b]ecause the alleged

19 misrepresentations appeared on the actual packages of the products purchased, there is no concern

20 that the class includes individuals who were not exposed to misrepresentation.'" *Id*. at *4 (quoting

21 *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013)). Because the allegedly unlawful

22 product labels did not change during the class periods (and because both cases involved far fewer

23 products than the instant case), the proposed classes in *Werdebaugh* and *Brazil* did not present

24 ascertainability problems remotely as severe as exist in this case.

25       In sum, the Court finds that Bruton has failed to propose a class definition that is "precise,

26 objective, and presently ascertainable . . . sufficiently definite so that it is administratively feasible

27 to determine whether a particular person is a class member." *Sethavanish*, 2014 WL 580696 at *4

28 (internal quotation marks and citation omitted). Accordingly the class is not ascertainable, and this

15

1   flaw is fatal to Bruton's Motion for Class Certification. The Court therefore DENIES the Motion

2   for Class Certification.

3   **IV.     MOTION TO FILE UNDER SEAL**

4   Also pending before the Court is Gerber's Administrative Motion to File Under Seal, in

5   which Gerber asks the Court to seal material submitted in support of Gerber's Opposition to class

6   certification. ECF No. 87. Specifically, Gerber asks the Court to seal paragraphs 16 through 20 of

7   the Greenberg Declaration and the entirety of Dr. Scott's expert report. *Id.* at 1. Gerber contends

8   that sealing is warranted because both the Greenberg Declaration and Dr. Scott's expert report

9   "discuss or incorporate highly sensitive and confidential business information relating to Gerber's

10  proprietary brand and pricing strategy and its private brand and market research." *Id.*

11  With respect to paragraphs 16 through 20 of the Greenberg Declaration, the Court

12  GRANTS Gerber's Motion to File Under Seal. This sealing request is narrowly tailored to

13  confidential business information, which is sealable under Civil Local Rule 79-5 and *Kamakana v.*

14  *City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). With respect to Dr. Scott's expert

15  report however, the Court finds that Gerber's sealing request is substantially overbroad. *See*

16  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of

17  harm, unsubstantiated by specific examples of articulated reasoning" will not suffice); *see also*

18  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002)

19  (requiring a "particularized showing," such that "specific prejudice or harm will result" if the

20  information is disclosed). While portions of the 105-page expert report reference pricing strategy

21  and other confidential business matters that are likely sealable, other portions of the report—such

22  as the results of Dr. Scott's trips to local grocery stores in which Dr. Scott observed and recorded

23  the different labels on Gerber products offered for sale, Scott Decl. ¶¶ 35, 38, Ex. 9—clearly do not

24  contain confidential information. Accordingly, the Court DENIES Gerber's Motion to File Under

25  Seal as it relates to Dr. Scott's expert report. Because Gerber may be able to file a narrower sealing

26  request that meets the standards for sealing, this denial is without prejudice. Should Gerber elect to

27  file a renewed sealing motion, it shall do so within 14 days of this Order.

28

**V.     CONCLUSION**

For the foregoing reasons, the Court rules as follows:

1. Plaintiff's Motion for Class Certification, ECF No. 82, is DENIED.
2. Defendant's Motion for Leave to File Under Seal, ECF No. 87, is GRANTED in part and DENIED in part.
3. Defendant's Motion to Exclude the Expert Opinion of Dr. Oral Capps, ECF No. 94, is DENIED as moot.
4. Defendant's Motion to Exclude the Expert Opinion of F. Edward Scarbrough, ECF No. 95, is DENIED as moot.
5. Defendant's Motion to Exclude the Expert Opinion of Dr. Julie Caswell, ECF No. 96, is DENIED as moot.
6. Defendant's Motion for Leave to File Evidentiary Objections to the Reply Declaration of Dr. Oral Capps, ECF No. 125, is DENIED as moot.

**IT IS SO ORDERED.**

Dated: June 23, 2014

*Lucy H. Koh*
LUCY H. KOH
United States District Judge